FIRST NATIONAL BANK OF MADISON, APPELLANT, V. SCHOOL
DISTRICT ET AL., APPELLEES.

FILED NOVEMBER 22, 1906. No. 14,483.

1. **Principal and Surety:** CONTRACT: CONSTRUCTION. Where a bond
given by a contractor, conditioned on the faithful performance of
a building contract on his part, provides that in case of default
on his part the surety may take possession of the building and
complete the work, and that in such event "the reserve in the
hands of the owner (of the building), together with any other
moneys due or to become due," shall be paid by the owner to the
surety, in order to determine the rights of the surety under such
provision the building contract proper and the bond should be
construed together as constituting a trilateral contract *inter
partes.*

2. ————. In such case, where the contractor defaults and the surety
completes the building according to contract, the latter does not
stand in the position of assignee with respect to the "reserve" in
the hands of the owner and "other moneys due or to become
due," but as an original party to the trilateral contract.

3. ————: ASSIGNMENT. Future earnings or profits under an existing
contract either public or private are assignable.

APPEAL from the district court for Madison county:
JOHN F. BOYD, JUDGE. *Reversed with directions.*

*Allen & Reed,* for appellant.

*Kennedy & Learned, Moyer & Foster, Mapes & Hazen,
S. O. Campbell, M. D. Tyler* and *Samuel J. Tuttle, contra.*

ALBERT, C.

This is an appeal from a decree of the district court for
Madison county, directing the payment of a fund in court
to certain of the appellees, and excluding the appellant
from participation therein. There appears to be no dis-
pute as to the facts. The record shows that on the 21st
day of June, 1900, Frank Moore entered into a contract
in writing with a school district in Madison county,
whereby he agreed to erect a school building and furnish

the labor and material therefor for $11,400, to be paid in instalments as follows: "On or about the first of each month during the progress of the work the architect shall prepare an estimate of the value of the materials furnished and the labor performed by the contractor during the preceding month and shall deliver such estimate in writing certified to over his signature to the contractor. Upon presentation of such estimate and certificate to the owner by the contractor the sum of 85 per cent. of the amount of such estimate will be paid by the owner to the contractor. The final payment shall be made within ten days after this contract is fulfilled." A bond in the penal sum of $6,000 being required of the contractor, conditioned on the faithful performance of his part of the contract, he made written application therefor to the Fidelity & Deposit Company of Maryland, which application contains the following clause: "And I do further agree in the event of any breach or default on my part of the provisions of the contract hereinbefore mentioned that the Fidelity & Deposit Company of Maryland, as surety upon the aforesaid bond, shall be subrogated to all my rights and properties as principal in said contract, and that deferred payments and any and all moneys and properties that may be due and payable to me at the time of such breach or default or that may thereafter become due and payable to me on account of said contract shall be credited upon any claim that may be made upon the Fidelity & Deposit Company of Maryland under the bond above mentioned." The surety company furnished the bond, becoming surety thereon, which was accepted and approved by the school district on the 28th day of June, 1900. It contains, among other provisions, the following: "If the said principal shall abandon said contract or fail to comply with any or all of the conditions of said contract to such an extent that the same shall be forfeited, then said surety, upon the notice above stated, shall have the right and privilege in its option to sublet or complete said contract, whichever said surety may elect to do, provided it is done in accordance

with said contract; and if said contract shall be sublet or completed by said surety, then the reserve in the hands of the said owner, together with any other moneys due or to become due, shall be paid by said owner to said surety, at the times mentioned in said contract, on account of any loss or expenses arising out of said contract and any loss or expenses sustained by said surety in subletting or completing said contract; and if said owner shall complete or relet the said contract, then all reserve, deferred payments and any or all other moneys and properties at that time due and payable or that thereafter may become due and payable to the said principal under and by virtue of said contract shall be credited upon any claim the said owner may make upon said surety because of the failure of said principal to comply with the terms of said contract; if any suits at law or proceedings in equity are brought against said surety to recover any claim thereunder, the same must be instituted within six months after the completion of the work specified in said contract." At the time the bond was furnished, and in accordance with the terms on which it was furnished, the contractor paid $1,500 into the hands of the surety company as indemnity against loss or damage on its part by reason of its suretyship. The money with which this payment was made was borrowed by the contractor from the Bank of Colfax, Iowa, in pursuance of an arrangement wholly between him and that bank. Afterwards, and in pursuance of his contract, the contractor began the erection of the building and went on with the work until November 9, 1900, when he abandoned it. Whereupon the surety company, exercising the option given it by the quoted provision of the bond, took possession of the unfinished building, material, etc., and completed the building according to the terms of the contract.

On the 11th day of September, 1900, the contractor borrowed $2,000 from the First National Bank of Madison, Nebraska, to pay for labor and material required in the erection of the building, and which was used for that

purpose, giving his note therefor, payable in 20 days after date, and bearing 10 per cent. interest. The note was not fully paid at maturity, and thereafter to secure the payment of the amount due thereon the contractor executed and delivered two instruments in writing to the First National Bank of Madison. The first bears no date, but was given October 3, 1900, and is as follows: "To the School Board of District No. 1. Gentlemen: I hereby assign my fourth estimate on my school contract to the First National Bank of Madison, Neb., or so much thereof as will be necessary to pay the balance of a $2,000 note after applying my present third estimate of $765, and I hereby authorize the architect to send said estimate to the said bank and I also authorize the school board to draw the warrants in their favor. In case the 4th estimate should not be sufficient to pay above claim I include the fifth estimate on the same conditions. Frank Moore." The second is in these words: "Madison, Nebraska, Oct. 27, 1900. I hereby assign to the First Nat'l Bank of Madison, Nebraska, any and all money due and to become due me on my contract with School District No. 1 of Madison county, to an amount sufficient to pay said bank the balance due on one promissory note in the sum of $2,000, on which $765 has been paid, and one note of $200, with interest on both notes. And I hereby authorize the architect, J. C. Stitt, to send my future estimates to said bank until said notes shall be fully paid; and I authorize and direct the board of trustees of said school district to draw the warrant or warrants for said money to said bank. My intention being that this assignment shall cover the first money to become due and payable under said contract. In presence of Peter Rubendall. Frank Moore." The foregoing instruments were presented to the school district by the bank and two payments made thereon by the former, one of $765 on October 8, 1900, another of $309.50 on November 9 of the same year. On the 9th day of November, 1900, the contractor gave the Bank of Colfax, Iowa, an order in writing on the surety company for the

$1,500 he had paid over to it as indemnity against loss or damage on its part, and a few days later an assignment in writing of all moneys not exceeding $3,000 due and accruing to him under his contract with the school district. The surety company had immediate notice of the order and assignment. In September, 1901, suit was brought against the surety company in the state of Iowa by the Bank of Colfax on the order given by the contractor November 9, 1900, and such suit was pending when the case at bar was decided. On the 3d day of December, 1900, the Omaha Hydraulic Press Brick Company brought suit aided by attachment in the county court of Douglas county against the contractor on an account for goods, wares and merchandise sold and delivered to him, wherein the surety company was summoned as garnishee. The garnishee answered, and service on the defendant was had by publication. In that case the court found $219.94 due the plaintiff therein, and gave it a lien on the funds in the hands of the surety company, ordering the company as garnishee to pay sufficient thereof into court to discharge the amount found due the plaintiff, with costs of that suit. A summons in garnishment issued against the surety company on the 14th day of December, 1900, on a judgment for $381.45, and costs, rendered in favor of James B. Hume and against the contractor in the county court of Madison county, but transcribed to the district court of that county, the writ in question issuing from the district court. The garnishee answered April 23, 1903, but no order appears to have been made thereon.

After the surety company had undertaken to complete the school building, certain payments on the contract price were made direct to it by the school district, which, with the amounts theretofore paid to the contractor, or on his orders, and a small amount of damage for delay in the completion of the building deducted from the entire contract price, left a balance of $1,802 due and owing from the school district by the terms of the .contract. As there were several claimants for this fund and the school dis-

trict could not with safety decide between the rival claimants, the money was paid into court in order that the rights of the several parties might be litigated and determined. The First National Bank of Madison came in and laid claim to a sufficient amount of the fund to pay the remainder due on the $2,000 note it had taken from the contractor, basing its claim on his assignments to the bank hereinbefore set out. The surety company came in, alleging that after giving credit for all payments made direct to it by the school district, and for the $1,500 indemnity money paid it by the contractor when the bond was given, there was a certain remainder due it for the expense incurred in the completion of the building, and insisting that such remainder should be a first charge against the fund in court by virtue of the provisions of the bond. It also claimed to be entitled to the entire fund to protect itself against the claims of the Bank of Colfax and others not necessary to mention at this time. The brick company and Hume came in, claiming a right to a portion of the fund by virtue of their respective proceedings in garnishment. The Bank of Colfax, although made a party and constructively served, made default. There were other claimants, but they were cut out by the decree and have acquiesced therein. On the 13th day of March, 1905, the court entered a decree for the distribution of the fund. It found the remainder due the surety company for the completion of the building, after deducting the payments made to it by the school district and the $1,500 indemnity money, $685.05, and that the same was a first charge against the fund in court. The claim of the brick company was found to be $293.60, and that of Hume $524.89, and to be second and third charges respectively against the fund. The court further found that the surety company was entitled to the residue of the fund for the purpose of protecting itself against the claims of the Bank of Colfax. As to the claim of the First National Bank of Madison, the court found that the remainder due on the $2,000 note at the date of the decree was $1,362.50, but

that the bank had no right or interest in or to the fund in controversy. From a decree entered in accordance with the foregoing findings, the First National Bank of Madison appeals.

The appellant contends that the contractor's obligation to the surety company with respect to its succession to his right to payment from the district amounts to no more than "an agreement for a future assignment dependent on the condition precedent of a 'breach or default' on the part of Moore (contractor) in fulfilling his contract with the school district." This contention is based on that portion of the application hereinbefore quoted, the argument being, in substance, that, as the application preceded a binding contract between the contractor and the school district, the contractor's rights under such contract did not have even a potential existence when the application was made and therefore were not assignable. That argument would be of doubtful validity even were we to assume that the quoted language of the application amounts to an assignment, or attempted assignment, of the contractor's rights under his contract with the school district to the surety company. The application, until accepted by the surety company, was a mere offer, and did not become binding until the bond furnished thereon had been accepted and approved by the school district. On the other hand, the contract between the contractor and the school district was not perfected and did not become binding and effective until the bond had been accepted and approved by the school district. The two contracts, therefore, are interdependent, and became binding and effective at the same instant. It may be said in passing that the quoted clause of the application is substantially included in the quoted provisions of the bond. Whether an assignment of a subject matter which becomes potentially existent at the very instant the assignment is executed is valid, is a question we do not feel called upon to decide at this time, because, in our opinion, the surety company's relation to the fund is not that of an assignee, or one claim-

ing as assignee, but of an original party to what we regard as the contract *inter partes*. As we have seen, the building contract proper and the bond are interdependent and took effect at the same instant. They should be construed together as constituting a trilateral contract. According to the terms of such contract, so constituted, the school district was to pay $11,400 for the erection of the building. In case the contractor completed the building according to the terms of the contract the entire contract price was to be paid to him. But in case of default on his part and the completion of the building by the surety company in pursuance of the provisions of the bond," then the reserve in the hands of the said owner (school district), together with any other moneys due or to become due," was to be paid to the surety company "at the times mentioned in said contract," not as assignee, but as one of the parties to the trilateral contract. The decree of the district court to the extent that it makes the balance due the surety company a first charge against the fund in controversy is right.

This brings us to the contest between the appellant and the parties claiming by virtue of their proceedings in garnishment. As we have seen, the assignments under which the appellant claims are prior in point of time to either of those proceedings. Those claiming under such proceedings contend that the assignments to the appellant are of no effect because the subject matter of the assignments had no actual nor potential existence when they were made. This contention cannot be sustained. At the time the two assignments were made there was a valid and existing contract between the contractor and the school district, and his rights thereunder were assignable. As was held in *Perkins v. Butler County*, 44 Neb. 110: "An assignment of moneys not yet earned, but expected to be earned in the future under an existing contract, is in equity valid and enforceable." The rule is thus stated in 4 Cyc. 17: "Anticipated profits under existing agree-

40

ments may be assigned, although the contract under which the work is done may be indefinite as to the time of employment and the amount to be paid for the work." One of the cases cited in support of the text is *Morrill v. Noyes*, 56 Me. 458, 96 Am. Dec. 486, where the rights of an agent under a contract, whereby he was to receive commissions on renewal premiums to accrue annually for a given period, were held assignable. See, also, 4 Cyc. 20, and cases cited. The foregoing rule, according to the great weight of authority, is applicable to both public and private contracts, in the absence of a statutory rule to the contrary. This proposition was at least tacitly recognized in *Perkins v. Butler County, supra.* See *Fortunato v. Patten*, 147 N. Y. 277; *Hipwell v. National Surety Co.*, 130 Ia. 656; *Dickson v. City of St. Paul*, 97 Minn. 258; 4 Cyc. 22. The assignments to the appellant, therefore, were valid, and operated as a transfer *pro tanto* of the contractor's interest in the trilateral contract. That interest, at the time the assignments were made, was the then unpaid remainder of the contract price, plus the $1,500 indemnity money paid the surety company, less the cost and expenses incurred by the surety company in the completion of the building and by reason of the contractor's default. Such cost and expenses, after deducting the payments made direct to the surety company by the school district and the $1,500 indemnity money, amounted at the date of the decree to $685.05, and bears interest at 7 per cent. per annum. The fund in court, then, representing the remainder due on the contract price, less the remainder due the surety company, is covered by the assignments to the appellant bank, and should be applied on the amount found due it, which, with the remainder due the surety company, exceeds the fund in court. Consequently, there would be nothing left for the other claimants, and a discussion of their rights *inter se* would be profitless.

As to that portion of the decree which permits the surety company to take and hold any portion of the fund to protect itself against the claims of the Bank of Colfax,

little need be said.  The claim of that bank is based on an order or assignment made long subsequent in point of time to those of the appellant.  Nothing could pass by such an assignment giving the Bank of Colfax a claim against the surety company, save such remainder as might remain in its hands after the accounts between itself and the contractor had been adjusted.  As we have seen, upon an adjustment of those accounts, nothing was found due the contractor but a remainder in favor of the surety company, which the court ordered paid out of the fund in court.  As there was nothing due the contractor from the surety company on a final adjustment of the accounts between them, nothing passed by virtue of the order or the assignment given by the contractor to the Bank of Colfax, and it has no claim against the surety company by virtue thereof.  Whether it thereby acquired any rights against the school district is another question, but, if it did, it is not asserting them; and, if it were, they are junior and inferior to those of the appellant.  We know of no reason, and there is certainly nothing in the contract, that would warrant the court in allowing the surety company to take and hold a portion of the fund to protect itself against a groundless claim asserted in a foreign jurisdiction.  The decree, to the extent that it gives the garnishing creditors priority over the appellant, excludes the appellant from participation in the fund, and permits the surety company to take or retain any portion of the fund over and above the remainder found due it, with interest, is erroneous, but in all other respects is right.  It would seem, however, that a new decree is desirable, rather than a modification or correction of that entered by the district court.

It is therefore recommended that the decree of the district court be reversed and the cause remanded, with directions to enter a decree conforming to the views expressed in the foregoing opinion.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree in accordance with said opinion.

JUDGMENT ACCORDINGLY.

BARNES, J., not sitting.