George F. LA BOUR, Trustee in Bankruptcy of East Construction Company, a Michigan Corporation, Bankrupt, Plaintiff,

v.

William M. ALLEN, Defendant.

Civ. A. No. 2696.

United States District Court
W. D. Michigan, S. D.

July 14, 1958.

Hartwig & Crow and Joseph D. Hartwig, Benton Harbor, Mich., Schmidt, Smith, Howlett & Halliday and Robert G. Howlett, Grand Rapids, Mich., for plaintiff.

Small, Zick & Shaffer and Robert P. Small, Benton Harbor, Mich., for defendant.

STARR, Chief Judge.

The East Construction Company, a Michigan corporation, was adjudged a bankrupt February 14, 1953, and George F. LaBour was appointed and qualified as trustee of the bankrupt's estate. The trustee began the present plenary action against William M. Allen as defendant to collect certain sums alleged to have been received by Allen as voidable preferential payments under § 60, subs. a and b of the National Bankruptcy Act, 11 U.S.C.A. § 96, subs. a, b, or as voidable fraudulent transfers under §§ 67, sub. d and 70, sub. e of that act, 11 U.S.C.A. §§ 107, sub. d, 110, sub. e. The parties have filed a stipulation of facts to be considered by the court and have also agreed that the case be submitted and determined upon the stipulation and briefs, without further hearing or argument.

This action arises out of the following factual situation: Defendant Allen was engaged in the business of selling insurance in the city of Benton Harbor, Michigan, and for a period of about three years prior to 1952 had sold various types of insurance to the bankrupt and carried an open, running account with the bankrupt, whereby policy premiums were charged to the bankrupt and credit given for payments made and for premiums refunded. On August 11, 1952, Allen sold the bankrupt corporation nine insurance policies and arranged to finance the bankrupt's payment of the premiums, aggregating $3,987.50, through the City Bank of Detroit. In pursuance of this arrangement the bankrupt on the same date, August 11, 1952, executed a "premium installment contract," which showed the total premiums of $3,987.50 and provided for a down payment of $797.50, leaving a balance of $3,190 to be financed. It appears that the financing was for the gross amount of $3,261.76, which consisted of the above balance of $3,190 plus prepaid interest of $71.76. However, the down payment of $797.50 shown by the premium-installment contract was not paid by the bankrupt, although it appears that the next day, August 12th, the bankrupt paid Allen $1,000. The bankrupt did not direct how this $1,000 payment was to be applied, but under all the facts and circumstances it may reasonably be assumed that it was to cover and include the agreed down payment of $797.50, and that the balance of $202.50 was to apply on the open, running account between the parties. Under the premium-installment contract the bankrupt agreed to pay Allen, or the City Bank of Detroit as assignee, the above-mentioned sum of $3,261.76 together with interest, in monthly installments of $407.72. On the date of the execution of the premium-installment contract, that is, August 11th, Allen assigned all his interest in the contract to the City Bank of Detroit, and his assignment provided as follows:

"For and in consideration of the balance due as shown on the reverse side hereof, the undersigned (Allen) assigns *(without liability to meet assured's payments in case of default)* all right, title and interest in and to the foregoing contract and in and to all sums payable thereon and collateral security covered thereby to City Bank, Detroit, Michigan, and does authorize said assignee to make payment of the balance due as shown on the reverse side hereof to the insurance company or companies issuing the policies covered thereby or its or their authorized agent or agents."

In pursuance of this assignment of the premium-installment contract the City Bank of Detroit paid or credited to Allen the sum of $3,190, which, with the down payment of $797.50, constituted full payment of the premiums of $3,987.50 for the nine insurance policies sold by Allen to the bankrupt company.

Included among these nine policies were a workmen's-compensation policy and a general-and-automobile-liability policy issued by the Fireman's Fund Indemnity Company, which are the only policies involved in this action. The premium on the workmen's-compensation policy was $2,280.11, and the premium on the general-and-automobile-liability policy was $983.28, making a total of $3,263.39, which the insurance company charged to its agent Allen. In September, 1952, the bankrupt defaulted in its monthly payment under the premium-installment contract, and the City Bank notified Allen of the default. On October 12, 1952, Allen canceled or caused to be canceled the above-mentioned workmen's-compensation policy and the general-and-automobile-liability policy, and also canceled the seven remaining policies, which are not involved in this action.

After an audit following termination of the workmen's-compensation and liability policies, to determine the amount of earned and unearned premiums thereon, the Fireman's Fund Indemnity Company on December 16, 1952, issued to Allen audit reports showing credits for unearned premiums on the workmen's-compensation policy in the amount of $1,754.16 and on the liability policy in the amount of $800.49, making a total credit of $2,554.65. On December 19th Allen issued a credit memorandum to the bankrupt evidencing the cancellation of the two policies and crediting the bankrupt's account with said sum of $2,554.65.

■ It appears that in February, 1953, Allen paid to the City Bank of Detroit the above-mentioned sum of $2,554.65 and in April, 1953, the sum of $667.11, making a total of $3,221.76, which was the balance, including interest, due under the premium-installment contract executed by the bankrupt on August 11, 1952. However, Allen was under no obligation to turn over and pay to the City Bank of Detroit the sum of $2,554.65 received by him from the insurance company, because he had assigned all his right, title, and interest in the premium-installment contract to the bank without recourse or liability on his part to meet the bankrupt's payments in case of default.

The plaintiff claims that the above-mentioned credit or payment by the insurance company to Allen of the sum of $2,554.65 on December 16, 1952, which was within four months of the institution of bankruptcy proceedings, constituted a voidable preferential payment under § 60, subs. a and b of the Bankruptcy Act, or a voidable fraudulent transfer under §§ 67, sub. d and 70, sub. e of the act, and that the plaintiff is entitled to recover that sum from Allen. The plaintiff also contends that the receipt by Allen of payment or credits for the unearned premiums of $2,554.65 on the two policies in question was in effect a transfer to Allen of funds owing to the bankrupt corporation.

■ It is clear that by financing the sum of $3,190 through the premium-installment contract on August 11, 1952, and the payment of $1,000 on August 12th, the bankrupt had made full payment of the premiums on all nine policies which it had purchased through Allen, including the workmen's-compensation policy and the general-and-automobile-liability policy here in question. Therefore, these two policies were owned by and were the property of the bankrupt. The insurance company had charged the premiums for these two policies to its agent Allen, and the bankrupt had made full payment of the premiums to Allen. When these policies were canceled on October 12, 1952, the bankrupt as owner of the policies was entitled to the refund of unearned premiums in the aggregate amount of $2,554.65 and could have recovered that amount from the insurance company. The City

Bank undoubtedly had a claim against the bankrupt under the premium-installment contract, but it had no claim against Allen, as he had assigned the contract to the bank without recourse. The insurance company erroneously paid or gave credit to Allen for the sum of $2,554.65, and it is clear that Allen should have turned over and paid that sum to the bankrupt. The court accordingly concludes that under the applicable provisions of the Bankruptcy Act the plaintiff trustee is entitled to recover the sum of $2,554.65 from defendant Allen.

We now turn to the plaintiff's claim against defendant Allen for the sum of $294.90. It appears that the bankrupt had entered into a construction contract with The Welsbach Corporation and that on April 15, 1952, Allen issued or caused to be issued a surety bond of the Michigan Surety Company to The Welsbach Corporation for the bankrupt's performance of the contract. The premium for this bond was $294.90, which Allen paid to the surety company in April, 1952, and the bankrupt thereby became indebted to Allen for that amount. It appears that the bankrupt corporation defaulted in its performance of the construction contract with The Welsbach Corporation, and the Michigan Surety Company undertook completion of the contract. The bankrupt did not pay the premium either to Allen or to the Surety Company, and on March 7, 1953, after the adjudication in bankruptcy, the Surety Company voluntarily refunded and repaid to Allen the premium of $294.90.

It is clear that the bankrupt had received the full protection and benefit of the surety bond and that it was not entitled to a refund of the premium by the Surety Company. So far as the record shows, there was no legal obligation on the Surety Company to refund the premium to Allen, and this refund was obviously a voluntary act on its part. As there was no obligation on the Surety Company to refund the premium either to Allen or to the bankrupt, it cannot be held that its voluntary refund to Allen constituted a voidable preferential payment of the bankrupt's debt to Allen or a fraudulent transfer of the bankrupt's property. The court concludes that the plaintiff trustee is not entitled to recover the sum of $294.90 from Allen.

A judgment will be entered in favor of the plaintiff trustee and against defendant Allen for the sum of $2,554.65. The plaintiff may recover court costs.

As the foregoing opinion sets forth the court's findings of fact and conclusions of law, separate findings and conclusions are not necessary. Rule 52(a), Federal Rules of Civil Procedure as amended, 28 U.S.C.A.; Western Pac. R. R. Corp. v. Western Pac. R. Co., 9 Cir., 197 F.2d 994, 1005.