CITIZENS STATE BANK, Appellant, v. TRAVELERS INDEMNITY COMPANY, Respondent.*

*May 5—June 2, 1959.*

\* Motion for rehearing denied, with $25 costs, on October 6, 1959.

For the appellant there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway*, attorneys, and *Paul D. Hilton* and *Lee Nutt* of counsel, all of Wausau, and oral argument by *Herbert L. Terwilliger*.

For the respondent there was a brief by *Gorman & Gorman* of Wausau, and oral argument by *David A. Gorman*.

CURRIE, J.  At the trial it was stipulated that, if the three canceled policies were not subject to a retrospective premium adjustment, the amount of the unearned short-term premiums due thereon at time of cancellation would exceed the amount due on the note which the borrower insured had executed to the plaintiff bank. It is the contention of the plaintiff that the defendant Insurance Company has by contract estopped itself from introducing any evidence establishing that the policies were subject to a retrospective premium audit and adjustment. This the defendant denies. It is the further position of the defendant that the evidence introduced by the plaintiff failed to prove a cause of action.

The insured to whom the three policies in question were issued is the Clintonville Transfer Lines, Inc., a common motor carrier, hereinafter referred to as "Clintonville." The term for which all three policies were issued was for one

year commencing February 1, 1955. The types of policies, and the original premiums for each were as follows:

Workmen's compensation............$ 3,585.00
General liability...................    341.08
Public liability and property damage..  8,813.90

Total original premiums..........$12,739.98

Clintonville made a down payment of $4,841.95 on such premiums and borrowed $7,898 from the plaintiff bank with which to pay the remaining balance. A "Stevens Plan" note was executed by Clintonville to the bank for such loan in the sum of $8,062.55, which amount included $164.55 of interest. The note provided that such sum of $8,062.55 was payable in nine monthly instalments.

A "Stevens Plan" note is a special copyrighted form of secured note designed to enable banks to finance loans for insurance premiums with safety. Such safety consists in the fact that under the plan any return premiums, or losses payable to the insured, are pledged as security, and the amount of the loan owing at any time is not to exceed the amount of return or unearned premiums. A description of the policies, the premiums of which are being partially financed by the loan, is stated on the face of the note in blanks provided for such purpose. Such description includes the name of the insurance company, the policy number, the premium, the kind of coverage, the date of the policy, the term, and the expiration date. The security clause of the note appears below such description and provides as follows:

"As security for the indebtedness evidenced hereby, the undersigned insured hereby assigns to the bank any and all sums which may be or become payable to the undersigned insured in connection with or on account of said policy, including:

"(a) Any return premium which may become due under the said policy, other than from cancellation; and

"(b) Any unearned premium which may become due on account of cancellation of said policy at any time by the undersigned insured, the bank, or the insurance company; and

"(c) Any payment on account of loss which reduces or voids the unearned premium of the policy, subject however to all mortgagee interest, if any."

The note also contains a clause which directs and authorizes the Insurance Company issuing the policies to make all payments of return premiums and losses to the bank. Below the place provided on the face of the note for the signature of the borrower insured appears a notice to the Insurance Company or companies which have issued the described policies. Such notice on the face of the instant note read as follows:

"*To the Insurance Companies mentioned in the foregoing table:*

"Notice is hereby given you that we are financing the premium(s) on the above-described policy(ies) and/or bond(s), and your attention is directed to the terms thereof. The above-mentioned insured(s) have properly executed in our favor the original of the above note and assignment.

"We will issue check(s) to the order of the agent(s) noted below in payment of the premium(s) above mentioned and shall forward same to said agent(s) within forty-five (45) days from date of policy(ies) and/or bond(s) unless you instruct us prior thereto to issue said check(s) to your order and forward same to you.

"If the above-mentioned policy(ies) and/or bond(s) issued by you or your agents to the maker of the foregoing note differ in any way from the above description thereof, will you kindly advise us as promptly as possible.

"G. S. Vassau Ins. Agency
    "Insurance Agent                 Citizens State Bank"

Before advancing the $7,898 on the note, the bank forwarded to the defendant by mail a duplicate copy of the note bearing the afore-quoted notice, together with a printed

form of acknowledgment thereof to sign and return. The defendant completed such acknowledgment and returned it to the bank. In such acknowledgment the defendant took no exception to the description of the three policies appearing on the face of the note, which description set forth the respective premiums payable in dollars with no mention that such premiums were subject to audit and retrospective adjustment. Such acknowledgment also bound the defendant to make any payment of return premiums or losses directly to the bank. After receipt of such acknowledgment the bank advanced the $7,898 which was paid to defendant's agent to cover the balance of original premiums due.

Thereafter, Clintonville made three monthly instalment payments of $895.84 each to the plaintiff bank. Clintonville then went into receivership and no further payments were made. Notice of default was given by the plaintiff to the defendant which had the effect of canceling the policies. The plaintiff requested the defendant to pay over to it the amount of the short-term unearned premiums. The defendant refused on the ground that the policies were subject to a retrospective premium adjustment, which adjustment had extinguished any short-term unearned premiums.

It is significant that the policies themselves were not pledged by Clintonville to the plaintiff bank but only certain payments that might accrue to Clintonville thereunder. One Koch, the officer of the plaintiff bank who handled this particular loan, testified that the bank never saw the three policies described in the note. Koch further testified that it was not customary for the bank in making these "Stevens Plan" loans to have the policies in the bank's possession. By a paragraph in the face of the note, Clintonville acknowledged receipt of the policies. Under these facts, and the wording of the acknowledgment executed by the defendant and returned to the bank, we determine that there was no duty on the part of the bank to request an inspection of the

policies as a condition precedent to advancing the money on the note.

We further hold that the forwarding of the duplicate copy of the note bearing the notice to the defendant, and the return of the executed acknowledgment by the defendant, created a contractual relationship between the defendant and the plaintiff bank. The consideration for any express or implied promise on the part of the defendant, which resulted from such exchange of the notice and acknowledgment, was the advance by the plaintiff, after receipt of the defendant's acknowledgment, of the money loaned and its payment to the underwriting agent of the defendant. We are of the further opinion that this contractual relationship did give rise to an implied promise on the part of the defendant to the effect that the total annual premiums due defendant on the three policies were the amounts stated on the face of the "Stevens Plan" note. In the absence of any evidence that the plaintiff knew that the premiums were subject to retrospective adjustment, or was aware of facts which made it its duty to inquire into the matter, we deem such implied promise would be sufficient to estop the defendant from offering proof that the policies provided for a determination of premiums by subsequent audit and for a retrospective adjustment based upon such audit. This is because in the absence of extrinsic evidence to the contrary, the plaintiff bank was induced by the failure of the acknowledgment to state that the premiums might vary from the figures stated in the note to change its position to its prejudice. Cf., *Callaway v. Evanson* (1956), 272 Wis. 251, 254, 75 N. W. (2d) 456.

However, there is no estoppel *in pais* if the plaintiff bank knew that the premiums were subject to such audit and retrospective adjustment, or was aware of facts which made it its duty to inquire into the matter. *Thorp Finance Corp.*

*v. LeMire* (1953), 264 Wis. 220, 228, 58 N. W. (2d) 641;
19 Am. Jur., Estoppel, p. 741, sec. 86.

The defendant brought out in its cross-examination of
Koch that he knew at the time of making the loan that work-
men's compensation policies were customarily written on a
basis whereby the premium was subject to audit based upon
the number of employees covered. However, there is no
evidence that Koch knew that the two policies, other than
the workmen's compensation policy, which were described
on the face of the note, were subject to a retrospective
premium adjustment. Koch further admitted that the in-
structions for use of "Stevens Plan" notes stated that
policies subject to retrospective premium adjustment are
not suitable for financing under "Stevens Plan" loans.

This testimony by Koch might prevent any estoppel *in
pais* arising as to the stated premium of the workmen's
compensation policy. It certainly would have such effect to
the extent that the audit which resulted in the retrospective
premium adjustment as to such policy was one limited to
the pay roll of the covered employees. However, this is a
matter for the trial court to determine after both parties
have presented their evidence on such issue.

The fact, that there was evidence in the record that tended
to indicate that the plaintiff bank was not misled to its
prejudice by the defendant's acknowledgment with respect to
the amount of the workmen's compensation policy premium,
did not entitle the defendant to a nonsuit. It was conceded
on the record by the defendant that if the premiums on the
three policies had not been subject to a retrospective adjust-
ment, the unearned short-term premiums returnable at the
time the policies were canceled would have exceeded the
amount due the plaintiff on its note. This, together with
the evidence as to the making of the loan and the mailing
of the notice to the defendant and its return of the completed
acknowledgment to the plaintiff, was sufficient to establish

a *prima facie* case in behalf of the plaintiff. The burden was therefore upon the defendant to prove the extent to which the retrospective premium adjustment as to the workmen's compensation policy would have reduced the amount which the plaintiff otherwise would have been entitled to recover. This constituted part of the affirmative defense pleaded in the defendant's answer and would only partially defeat the plaintiff's cause of action.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

MARTIN, C. J., took no part.

HALLOWS, J. (*dissenting*). We cannot agree with the reasoning of the majority opinion. In late years it has been a common custom for insureds to borrow from a bank to finance the payment of insurance premiums and to give as security an assignment of the return and unearned premiums and certain losses which may become due to the insured under the policies. It is common knowledge that fire and auto insurance covering single risks are written on a fixed predetermined premium basis. Insurance like workmen's compensation, general liability, public liability, some fire policies, and other policies are written on a retrospective basis, which means that the premium paid at the time of issuance may not be sufficient to cover the risk throughout the entire term. Such policies generally provide that the total premium due on the risk will be determined by a retrospective audit and the original premium adjusted accordingly.

The "Stevens Plan" note and similar notes do not lend themselves to the financing of such policies because the losses payable thereunder are frequently not payable to the insured and the return or unearned premium may be very small, at least less than the amount loaned by the bank,

and in some cases will cease to exist and an additional premium developed. To properly use a note to finance insurance premiums the amount of the loan must be less than any return premium or unearned premium at all times or the security is not adequate for the loan. Whether the result is reached in any given situation depends upon the amount of the loan, its provisions for payment, and the type of insurance policy involved.

The evidence shows that the plaintiff bank had knowledge that workmen's compensation insurance was retrospectively rated and that the "Stevens Plan" note was not adapted to policies written on a retrospective basis. The plaintiff was in the business of financing insurance policy premiums and ought to have known the nature of the insurance policies which were the subject matter of its security. If it did not, it had the duty to inspect the policies which were available. The defendant Insurance Company was authorized in the note, which also constituted an assignment, to pay to the plaintiff any return premium and any unearned premium "which may become due under the policy" and to include the name of the bank with the insured in any check for certain losses. The notice to the Insurance Company of the financing of the premiums requested of the Insurance Company as follows:

"If the above-mentioned policy(ies) and/or bond(s) issued by you or your agents to the maker of the foregoing note differ in any way from the above description thereof, will you kindly advise us as promptly as possible."

The policies issued by the defendant were correctly described in the note as to number, premium, insurance company, kind of coverage, date, term, and expiration.

Under these facts the majority opinion implied a promise on the part of the defendant to the effect that the total

annual premiums due the defendant on the three policies were the amounts stated in the note. We find no basis for an implied promise in fact or in law that the premiums were any different than stated in relation to the kind of coverage described. The effect of this implied promise is to change the terms of the insurance contracts between the defendant and its insured and in effect make the defendant the guarantor of the note. After creating an implied promise the majority decision then estops the defendant from offering proof of the terms of the policy on the equitable theory that the plaintiff was induced by the failure of the Insurance Company to state in the acknowledgment that the premiums might vary from the figures stated in the note.

The plaintiff having actual knowledge that workmen's compensation insurance is written on a retrospective basis, and knowing that other types of insurance are written on such a basis, and the "Stevens Plan" note should not be used in connection with such policies, and having failed to inspect the policies which were available, did not act with due diligence in making the loan and is in no position to assert an equitable estoppel against the Insurance Company. *Wussow v. Badger State Bank* (1931), 204 Wis. 467, 234 N. W. 720. We do not consider it the duty of the defendant to instruct the plaintiff bank in its business of financing.

Since the policies did not differ in any way from the description thereof in the note, the defendant was under no duty to inform the bank of the various terms of the policies. There is no basis for assuming that the amount and kind of premium was different than expressly stated in the note for the kind of coverage provided in the policy described. The misuse of the "Stevens Plan" note and the ignorance of the bank ought not to be charged to the defendant Insurance Company, which had no notice of the bank's misuse or of such ignorance.

For the foregoing reasons we believe the case was correctly decided by the trial court and its decision should be affirmed.

I am authorized to state that Mr. Justice FAIRCHILD joins in this dissent.

* Motion for rehearing denied, with $25 costs, on October 6, 1959.