In the Matter of HEALTH SYSTEMS, INC., Debtor.

AFCO CREDIT CORPORATION, Plaintiff,

v.

Martin W. HOFFMAN, Trustee, Defendant.

Bankruptcy No. 2–82–00446.
Adv. No. 2–82–0435.

United States Bankruptcy Court,
D. Connecticut.

Nov. 10, 1982.

Rudolph P. Arnold, Arnold & Hershinson, Hartford, Conn., for plaintiff.

Martin W. Hoffman, Hartford, Conn., for trustee.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Health Systems, Inc. (debtor), a supplier of x-ray equipment, filed a chapter 11 petition on May 14, 1982. On August 5, 1982, the debtor converted the case to one under chapter 7 and Martin W. Hoffman was appointed trustee. The trustee thereafter purported to reject two insurance contracts with the Travelers Insurance Company. The return unearned premiums thereby resulting in the amount of $1,820.00 are the subject of the present proceeding.

### II.

Afco Credit Corporation (Afco), a New York Corporation engaged in the business of advancing funds for the payment of insurance premiums, filed a complaint asserting its right to the return premiums. Afco claims a security interest in these premiums pursuant to the following described premium finance agreement (agreement) dated June 13, 1981. This form agreement, prepared by Afco, designates the "insured" as Health Systems, Inc. and the insurance agent or broker as "Smith Brothers Ins., Inc.". The agreement lists two Travelers Insurance Company contracts whose premiums are being financed by Afco with payments totaling $9,293.27 to be made by the debtor in nine monthly installments.[1] The agreement also contains the following pertinent provisions:

> The undersigned on behalf of the insured named herein requests Afco Credit Corporation hereinafter referred to as Afco to pay the premiums on the policies described above. The insured promises to pay to the order of Afco at the address shown above, the amount stated in Block E in accordance with the Payment Schedule and subject to the provisions hereinafter set forth.

The named insured:

1. Assigns to Afco as security for the total amount payable hereunder any and all unearned premiums and dividends which may become payable under the policies listed above, and loss payments which reduce the unearned premiums, subject, to any mortgagee or loss payee interests.

. . . .

7. Agrees in the event of a default in payment of any installment due hereunder, or upon failure to comply with any of the terms or conditions hereof, or a proceeding in bankruptcy, receivership or insolvency be instituted by or against the insured, or if any of said insurance companies shall become insolvent, suspend business or cease to be qualified to do business, the unpaid balance due hereunder shall be immediately payable. In such event Afco may terminate the agreement and the unearned premiums on the policies shall be payable by the insurance companies to Afco upon Afco's request. Any payments received subsequent to the termination of this agreement may be credited against the indebtedness without affecting the acceleration of this note or any rights set forth herein and without any obligation on the part of payee or Afco to reinstate this agreement or request reinstatement of the policies in the event of cancellation. Any sum received from an insurance company shall be credited to the unpaid balance; any surplus shall be paid to the party entitled to same; in case of a deficiency, the insured shall pay the same with interest.

. . . .

9. Agrees that the insurance agent or broker through whom the policies were issued is not the agent of Afco.

---

1. The debtor made seven of these payments and does not dispute it owes Afco the two remaining installments of $1,847.86.

There then appears a blank line below which is printed in bold type:

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE REVERSE SIDE

NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. 3. KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.

Below this paragraph appears another paragraph entitled "PRODUCER'S REPRESENTATIONS", which, in pertinent part, reads as follows:

The undersigned warrants and agrees: (1) the insured has received a copy of this agreement, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interests assigned herein, (4) upon termination of this agreement or cancellation of any policies to pay the unearned premiums, dividends, and unearned commissions to Afco, unless he is obligated to pay the same to an insurance company or its agent. . . .

The signature of "Robert J. Smith" appears beneath this paragraph and over a line entitled "SIGNATURE OF AGENT OR BROKER". No other signature appears on the agreement.

## III.

The trustee denies that Afco has a valid security interest in the unearned premiums because the agreement was not signed by the debtor as the named insured. Afco contends that the agreement "was signed on behalf of the insured by the insurance agent." (Plaintiff's Reply Brief, p. 2).

Both parties agree that the transaction between the debtor and Afco is governed by the provisions of the Connecticut General Statutes concerning Insurance Premium Finance Companies, Conn.Gen.Stat. §§ 38–290 to 300 (1981). These provisions, in general, regulate and license foreign corporations which engage in the business of financing insurance premiums in Connecticut. Conn.Gen.Stat. § 38–291(2) defines an "insurance premium finance agreement" as

an agreement by which an insured or prospective insured promises to pay an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent or broker in payment of premiums on an insurance contract together with a service charge as authorized and limited by this chapter . . . .

The statutory requirements for such agreements are set forth in Conn.Gen.Stat. § 38–297 and include the following:

Every insurance premium finance agreement shall (1) be dated, signed by or on behalf of the insured . . . (2) contain the name and place of business of the insurance agent negotiating the related insurance contract . . . .

## IV.

The only testimony received in this proceeding was from John Flannery, an employee of Afco. He stated that it was Afco's practice to have the insurance agent sign the agreements in the manner done in this instance. He testified that the blank line providing for a signature by the insured had no purpose. Afco thus asserts that the signature by the insurance agent or broker satisfies the statutory requirement of a signature by or in behalf of the insured.

## V.

Based upon the evidence offered, I conclude that the plaintiff has not borne its burden of proof of showing compliance with the statute. Conn.Gen.Stat. § 38–297 specifically requires a signature on any insurance premium finance agreement by or on behalf of the insured. The form document prepared by Afco apparently contains space

for such a signature, and the notice section clearly contemplates one. The signature of the insurance agent following the section entitled, "PRODUCER'S REPRESENTATIONS", obviously governs the relationship between the agent and the finance company and does not, absent credible evidence to the contrary, constitute a signature on behalf of the insured. Despite the testimony as to Afco's practice of having these forms signed by insurance agents, Afco has not proven that the insurance agent here did, in fact, sign the agreement on behalf of the debtor.

Although the statute does not specify the consequences of a premium insurance financing agreement not being signed by or on behalf of the insured, it is clear that without a signature no written agreement to grant Afco a security interest in the unearned insurance premiums resulted. Afco cites to the court a number of district and bankruptcy court decisions which recognize that security interests in unearned insurance premiums may be created by premium finance agreements and no additional requirements for perfection pursuant to the Uniform Commercial Code exist.[2] However that may be, the only issue in this proceeding is whether the parties validly executed such an agreement, and I conclude that Afco has not borne its burden of proof on that issue. Judgment may enter denying Afco's request for a relief from stay for the purpose of cancelling insurance contracts and receiving the unearned insurance premiums due.

. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure. It is

SO ORDERED.

---

**2.** *Premium Financing Specialists, Inc. v. Lindsey,* 11 B.R. 135 (D.Ct., E.D.Ark.1981); *In re Auto-Train Corp.,* 9 B.R. 159 (Bkrtcy.Ct., D.D. C.1981); *In re Maplewood Poultry Co.,* 2 B.R. 550 (Bkrtcy.Ct., D.Me.1980); *In re Redfeather Fast Freight, Inc.,* 1 B.R. 446 (Bkrtcy.Ct., D.Neb.1979).