**William KAUFMAN, Appellant,**

v.

**The McLAUGHLIN COMPANY et al.,
Appellees.**

**No. 19341.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 5, 1965.

Decided Feb. 10, 1966.

284

Mr. Mark P. Friedlander, Washington, D. C., with whom Messrs. Mark P. Friedlander, Jr., Blaine P. Friedlander, Washington, D. C., Harry P. Friedlander, Arlington, Va., and Milford F. Schwartz, Washington, D. C., were on the brief, for appellant.

Mr. Albert E. Brault, Washington, D. C., with whom Mr. Bernard I. Nordlinger was on the brief, for appellee McLaughlin Co.

Mr. Thomas H. McGrail, Washington, D. C., with whom Messrs. J. Roy Thompson, Jr., and John Jude O'Donnell, Washington, D. C., were on the brief, for appellee National Surety Corp.

Mr. Francis J. Ford, Washington, D. C., entered an appearance for appellee Queen Ins. Co.

Mr. John F. Cooney, Washington, D. C., entered an appearance for appellee Maryland Cas. Co.

Before: PRETTYMAN, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant, hereafter plaintiff, appeals from a judgment on a verdict directed for defendants at the close of plaintiff's case. We affirm.

On November 19, 1958, plaintiff bought from one Karnell the hotel building at 2400 Sixteenth Street, Northwest, Washington, D. C. The contract of November 19, 1958, for this sale of premises, also contained an agreement whereby, simultaneously with transfer of title to plaintiff, plaintiff leased the hotel to Karbud Operating Corporation (Karbud) wholly owned by Karnell.

The lease provided that the tenant was to keep the buildings fully insured for the benefit of both landlord and tenant. It also provided that the premiums should be apportioned between landlord and tenant in case of expiration or termination of the term of the lease. Karnell had in 1958, through defendant McLaughlin Company (McLaughlin) as general agent, obtained policies of insurance with the other defendants, all insurance companies, for casualty, liability and boiler insurance pertaining to the building.

At the closing of title in January 1959, Karnell represented that all the policies had been paid for in full for the terms of the policies. This statement was accepted by plaintiff's representative. In fact, Karnell had paid those premiums with money borrowed from a corporation known as AFCO. The loan agreement required him to make certain repayments at periodic intervals, and assigned to AFCO as security all return premiums which might become payable under the policies listed therein.

Tenant Karbud failed to pay rentals due on October 1, 1959, and on October 13, plaintiff sent a five-day notice of termination of lease. Subsequently plaintiff learned for the first time, from

McLaughlin, that the insurance premiums had been financed by AFCO and further learned that because Karnell's payments on the loan had not been met AFCO was about to exercise its right to cancel the policies and obtain the return of the excess premium. Plaintiff avoided cancelation by making the payment due in October. The next instalment due AFCO on November 19, 1959, was not paid and on that date notices of cancelation executed by McLaughlin in behalf of the other defendants were sent to plaintiff and Karbud.

The unearned premiums, sometimes called return premiums, amounting to $28,890.64, were refunded by the insurers to McLaughlin, which applied the bulk of it to the balance due on AFCO's loan.[1]

I

We put to one side consideration of any right of action plaintiff may have against those not before us, either Karnell, who apparently cannot be found, or Karbud. We see no merit in plaintiff's alleged action against the insurers for the return premiums, based on provision in the policies for return of unearned premiums. We discuss the problem by reference to the National Surety Corporation comprehensive liability policy, which accounts for the bulk of the return premiums.[2] It was issued October 16, 1958, for a three-year term, the named insured being identified as Karbud, lessee of the hotel. Clause 19, Cancelation, provides that the policy may be canceled either by the named insured, with earned premiums computed on the short rate table, or by the company on notice of at least ten days, with earned premiums computed pro rata.

Plaintiff leans heavily on the endorsement of January 1, 1959, identifying him as "Additional Insured—Les-

1. McLaughlin applied approximately $1000 as an offset against an amount advanced by McLaughlin to Karnell and Karbud for payment of a previous instalment to AFCO. Plaintiff did not make any special claim that this amount stood in a special category because the person financing the insured stood in a dual position. We do not speculate on the merits of such a contention.

2. This is the only policy in the printed record, and apparently paragraphs 7–13 were omitted from printing.

sor," and providing that he was entitled to ten days' notice of cancelation. This endorsement undoubtedly gave plaintiff rights of considerable value while the policy was in force. In effect he became what in a casualty policy is referred to as a loss insured, covered against loss as his interest might appear. The policy insured him against loss arising out of claims against lessor based on ownership, maintenance or use of the hotel building —but only while leased to the named insured.[3] We have no occasion here to consider whether or to what extent plaintiff acquired protection through the endorsement against unilateral cancelation by the lessee. In this case there was cancelation by the company,[4] which accordingly retained a lesser amount of earned premiums than is applicable in the case of cancelation by the insured. Plaintiff was entitled to and received notice of such cancelation.

 In the absence of clear provision to the contrary we think the insurer was entitled under its contract to refund the return premium through its general agent even assuming, as we think we must in the stance of the directed verdict, that it knew or was chargeable with knowledge that the refund would be transmitted to AFCO. A premium financing plan is valid so long as there is no connection between the insurer and financing company. Annotation, 115 A.L.R. 1212, 1213. The insurer is under a general duty to make refunds to the persons who procured and paid for the policies or their assignees. There is no basis here for holding that such refunds marked a breach of any contract or other duty to the plaintiff given protection as an additional insured.

## II

The action against McLaughlin was in two counts, both based on the failure to inform plaintiff that the premiums were financed by AFCO, the first count alleging negligence, the second count alleging fraudulent concealment. Plaintiff's proof showed that in May 1959, after transfer of title and execution of the lease, the mortgagee requested evidence of payment of premium on the fire insurance policy and in turn plaintiff asked McLaughlin whether payment of the premiums had been paid on all the policies. On June 19, 1959, McLaughlin Company's vice-president replied: "Please accept this letter as our indication that all premiums have been paid for the full term of all policies issued from this office covering the above location."

The vice-president testified that he assumed the letter was merely an inquiry as to the status of protection of insurance policies, i. e., the existence of insurance in force. It stands against plaintiff that he did not put his May inquiry into the record. However, since a verdict was directed for defendants, we assume that a jury might have found intentional concealment of the financing plan.[5]

The District Court ruled that although defendant's letter was at the very least unfortunate in failing to disclose that the payments had been made with borrowed

3. This appears from the original policy clause, identifying Karnell as the "additional insured-lessor." The endorsement merely substitutes plaintiff for Karnell.

4. Plaintiff protested that the cancelation notice was defective since it stated: Reason Non-payment. While it is true that the "non-payment" was in the loan to AFCO, rather than the premium to the insurer, this does not vitiate the cancelation by the company.

5. There were marginal factors in the case, quite probably innocent, that might have contributed to an adverse jury finding: Item: defendant failed to notify AFCO of the additional insured. Item: even after plaintiff's inquiry, defendant advanced a monthly instalment on behalf of Karbud without notifying plaintiff. See note 1, *supra*.

However, there was no allegation or claim of collusion between McLaughlin and Karbud. Nor was any claim made that even though no action could be based on the June letter, plaintiff suffered additional damage because of McLaughlin's payment of premiums in September without notice to plaintiff.

money, there was no showing that plaintiff changed position to his detriment and only speculation offered that he might have canceled the lease. We agree, and add the observation that he would not have had the right to terminate the lease even if the fact of the financing had been disclosed.

The lease, which ran for a twenty-one year term, did not specify that term or any other term for the insurance coverage. It specified that the tenant should keep the building insured, for the benefit of landlord, tenant and mortgagees as their interest might appear, against loss by fire or other hazard. It further required the tenant to provide and keep in force comprehensive public liability insurance in companies satisfactory to landlord and in standard form, and provided that "such policies, with receipts evidencing payment of the premiums thereon, shall be delivered to and held by landlord."

We see no prohibition, for example, against a tenant's obtaining only one-year insurance policies. After eleven months, the landlord would have left only one month's insurance protection. The pertinent lease provision specified only that the tenant was to pay the renewal premiums at least fifteen days prior to the expiration of each policy.

Plaintiff's case is essentially based on the assumption that under the lease he is entitled to a three-year term in the policy and to prepayment of premium thereon. The landlord is entitled to an assurance of insurance that is reasonable in terms of commercial practice and the understanding of the parties. However, in the absence of express provision, or some basis for implication of an obligation beyond anything here shown, we do not consider that a lease agreement may be canceled as against a lessee keeping currently in force all types of insurance coverage specified in the lease, merely because of lack of advance rentals through prepayment of insurance. That conclusion is underscored where, as here, the insurance obligation was "additional rent" under a "net rent" lease which required basic rentals to be paid in advance only monthly. A tenant usually takes a liability policy with a three-year term, since the total premium thereon is traditionally only 2½ times the cost of a one-year premium. That does not give rise to a legal duty to contract for a three-year term. Certainly it does not prohibit borrowing part of the three-year premium. It is indeed commonplace for an insured to borrow a substantial part of the premium cost. The saving in premiums more than compensates for the interest cost.

The lessor has a right to monitor the existence of insurance in force, to see the policies and evidence of payment and renewal, to be informed of cancelation. Here plaintiff had sent a notice terminating the lease for failure to pay monthly rental before he received the first notice threatening termination of the insurance policy. Plaintiff has proved no legal detriment from the omission in McLaughlin's letter.

Affirmed.