**FIRST NATIONAL BANK AND TRUST COMPANY, a National Banking Corporation**

v.

**CMI CREDIT INSURANCE, INC., a Wisconsin Corporation.**

**No. 77–774 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

June 14, 1979.

Jerry C. Cobb, Milton D. Jones, Clearwater, Fla., for plaintiff.

John R. Bush, Tampa, Fla., for defendant.

## MEMORANDUM AND JUDGMENT ORDER

WILLSON, Senior District Judge.

This civil action came on for non-jury trial before the undersigned, sitting by special designation at Tampa, Florida. No oral testimony was offered by either party. The parties have submitted this case on stipulated facts, exhibits and the deposition of one Tom D. May, a loan officer with plaintiff bank. Counsel for each side were heard at oral argument, at which time defendant offered an additional exhibit, which was admitted into evidence.

Both parties have motions for summary judgment outstanding. Inasmuch as this Court has before it all the evidence, be it in the form of stipulated facts, exhibits or deposition, offered by the parties at the non-jury trial, these cross motions for summary judgment will be denied without prejudice and the Court will make the following findings of fact and conclusions of law as permitted under Rule 52.

Plaintiff, First National Bank and Trust Company, is a national banking corporation, having its principal office in the Town of Belleair Bluffs, Pinellas County, Florida. Defendant, CMI Credit Insurance, Inc., a Wisconsin corporation with its principal place of business in the State of Wisconsin, properly removed this action from state court pursuant to 28 U.S.C.A. § 1441. Jurisdiction is conferred by the diversity statute.

This is a suit for damages filed by the insured plaintiff to recover unearned premiums paid on various certificates of insurance issued by insuror defendant. What happened is that plaintiff and a third party, Mobile Indemnity Co. (MIC), entered into a written agreement (Defendant's Exhibit 1) whereby MIC contacted mobile home dealers for the purpose of buying their "paper," i. e. contracts for sales to purchasers, and would then offer this paper to the plaintiff bank for discounting. The bank would check the application and credit worthiness of the proposed purchaser and then, if acceptable, would discount the loan by paying MIC a portion of the interest charged for each of the mobile homes. By virtue of paragraph 5 of their agreement, MIC agreed to provide a credit insurance policy from a company rated A by Alfred M. Best, Inc., assuring the bank against credit losses. In paragraph 7, MIC agreed to assume collection activities on delinquent accounts, to pay the regular monthly payments fifty-five days after each account became due, and, after repossession, to bring the account current and keep the account current by making monthly payments on said account until such time as the bonding company (defendant) paid the account in full accordance with the terms of the bank's indemnity bond.

In discharge of its obligations under paragraph 5 of its agreement with the bank,

MIC obtained The Mobile Home Loan Master Policy (Plaintiff's Exhibit A) from defendant to provide credit insurance policy and paid the insurance premiums to defendant for each mobile home financed by plaintiff. The parties have agreed and stipulated that plaintiff bank did not pay the insurance premiums directly to defendant.

It was also stipulated that defendant issued the plaintiff various certificates of insurance for accounts or customers of plaintiff. (Plaintiff's Exhibit B). Further, it is agreed that plaintiff delivered to the defendant a Notice of Certificate Cancellation and Return Premium Request for each of the certificates of insurance issued by defendant to plaintiff. (Plaintiff's Exhibit C). Without stipulating as to plaintiff's entitlement thereto, the summary of account (Plaintiff's Exhibit D) is accurate and represents the total amount due ($17,950.80) in premium refunds.

MIC went out of business because mobile home sales greatly declined and, accordingly, it was unable to realize sufficient income to meet expenses. Having no other source of income, MIC was unable to continue and is not in business at the present time.

■■ The parties are in agreement that the *general rule with reference to the return of unearned premiums is that the premium, if returnable, is due to the insured, although if another has paid it in good faith, he may be entitled thereto, and the action need not necessarily be brought by the actual insured, but may be maintained by the nominal party in interest.* Globe & Rutgers Fire Ins. Co. v. Van Antwerpt Realty Corporation, Inc., 243 Ala. 524, 10 So.2d 849 (1942). Where the parties to an agreement stipulate that one of them will provide the insurance for the other, the latter is not entitled to the return of premiums *unless such intention is manifested by the* contract between them. Id., 10 So.2d at 851. See also Kaufman v. McLaughlin Company, 123 U.S.App.D.C. 92, 357 F.2d 283 (D.C.Cir.1966).

■ It is the plaintiff's position, however, that this general rule set forth in Globe applies *only* in the absence of an agreement between the insured and the person paying the premium for the insurance or in the absence of a provision in the insurance policy providing who is to receive the return premium. In this case plaintiff insists that it is entitled to the return of the premiums because not only does plaintiff's agreement with MIC allow it but also the insurance policy itself provides that unearned premiums should be refunded to the insured.

Plaintiff points to two provisions in the Mobile Home Loan Master Policy to advance its theory of the case. Paragraph 5 of the policy provides as follows:

"CANCELLATION BY THE INSURED

a. The Insured may cancel this policy at any time by returning it to the Company.

b. Certificates of Insurance may not be cancelled by the Insured and no portion of the premiums paid shall be refunded, except if the loan is prepaid in full or if the loan is refinanced by the Insured incident to the Borrower's subsequent purchase of a mobile home to replace the mobile home for which the loan was originally granted. The portion of the premium refunded in such cases shall be determined pursuant to the 'rule of 78', sometimes referred to as the 'sum of the digits rule', as set forth in the cancellation schedule which has been filed with the state insurance supervisory, *provided that premiums shall be refunded for any Certificate of Insurance for which a claim has been filed, upon a straight line pro-rata basis.*" (Emphasis supplied).

Plaintiff asserts that the plain language of this provision is that the insured may cancel and that premiums shall be refunded for any certificates for which a claim has been filed. Moreover, plaintiff looks to paragraph 10 of the policy, which in its pertinent part states:

"AMOUNT OF LOSS

a. The amount due the Insured from the Company shall consist of the unpaid balance of the loan less unearned in-

terest computed on a pro-rata basis and less the unearned portion of insurance premium advanced by the Insured. . . ."

Plaintiff maintains that this provision classifies and defines unearned premiums as part of the loss and it follows that the obligation to pay losses runs from the insuror to the insured, regardless of who paid the premiums.

Defendant vigorously denies that the insurance policy contains a provision that defendant will refund premiums to the plaintiff. It acknowledges that in certain cases the unearned premiums will be returned, but that provision does not indicate that the refund shall be made to the insured. Further, with regard to paragraph 10, there is indeed a reference to computation of the amount due to the plaintiff which takes into consideration the unearned portion of insurance premium *advanced by the insured*, but in this case there is no such showing that plaintiff made such an advance.

Additionally, the plaintiff contends that the agreement between plaintiff and MIC manifests MIC's intent that plaintiff receive premium refunds. It is averred that the thrust of this agreement as a whole is that MIC's obligation is to save and hold the plaintiff harmless for credit losses sustained on loans serviced by MIC. It is pointed out that in his deposition Mr. May indicated his belief that part of each fee paid to MIC was paid in consideration of and for the purpose of receiving a certificate of insurance for the particular loan.

This claim is refuted by defendant. The agreement between the plaintiff bank and MIC contains no provision wherein it is stated that unearned premiums are to be refunded to the plaintiff bank. It is noted that as part of that agreement and in discharge of its obligation to the bank, MIC did procure and pay for the subject credit insurance. However, the record is devoid of any evidence which demonstrates that the bank either paid for the insurance directly or indirectly by crediting MIC's account with the amount of the insurance premiums. Defendant maintains that MIC never manifested an intent to give the bank the right to receive the refund for unearned premiums for the certificates of insurance which it purchased.

It is the view of this Court that defendant's theory of the case is correct both in law and in fact. Neither the Mobile Home Loan Master Policy nor the agreement between plaintiff and MIC contain a provision or manifest the intention of MIC that plaintiff bank was to receive the refund for any unearned premiums. In the situation presented here, as in *Globe*, to give the insurance policy and the agreement between plaintiff and MIC the construction plaintiff paints, such a construction would give plaintiff more than it contracted for and would be contrary to the common meaning of the words employed in these contracts. Additionally, it must be noted that MIC was the sole party responsible for the payment of the premium and the only party in privity with the defendant insurance company insofar as the payment of the premium was concerned. In determining the net amount of refunds due, it is conceivable that defendant might have certain offsetting charges against MIC that could be made against MIC if the refunds were made to MIC that would be unavailable to it if the refunds were to be paid to plaintiff.

Finally, plaintiff complains or insists that defendant's activities shows that it has acknowledged plaintiff's entitlement to premium refund and that defendant has in fact paid partial refunds to plaintiff on certain of the refund claims sued upon. Specifically, plaintiff points to certain certificates of insurance marked with an asterisk in Plaintiff's Exhibit D in which defendant has paid plaintiff directly eighty-five percent of the refunds claimed. The simple answer to that charge is that it might well be that defendant has in the past erroneously made premium refunds to plaintiff, but that conduct certainly has not prejudiced plaintiff in any way.

An order will be entered directing judgment in favor of the defendant and against the plaintiff.