**In re ULY–PAK, INC., Debtor.**

**ULY–PAK, INC., Plaintiff,**

v.

**CONSOLIDATED INSURANCE AGENCY, INC. and The Bank of Carbondale, Defendants.**

**Bankruptcy No. BK 89–40188. Adv. No. 89–0071.**

United States Bankruptcy Court, S.D. Illinois.

June 21, 1989.

Terry Sharp, Mt. Vernon, Ill., for plaintiff/debtor.

P. Michael Kimmel, Carbondale, Ill., for defendant Consol. Ins. Agency, Inc.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

It is common practice when a business is faced with significant insurance premiums for the business to borrow money to finance the premium payments. Since premium payments are almost always made in advance for insurance coverage, there remains until the end of the policy period a portion of the insurance premium which the insurance company has not yet earned. This part of the premiums is referred to as "unearned premiums." When insurance policies are canceled prior to expiration of the policy period, unearned premiums are returned to the insured.

The significance of unearned premiums is that they provide the basis for a security arrangement to finance the premium payments. The entity to whom payments under the financing agreement are to be made obtains a security interest in the unearned premiums. Thus, upon default under the agreement, the entity may seek to retrieve the unearned premiums from the insurance company to be applied toward the balance on the loan taken to finance the arrangement. This case involves two such financing arrangements.

In its complaint Uly–Pak, Inc. (debtor), seeks to enjoin the threatened termination of certain insurance policies procured for debtor by defendant, Consolidated Insurance Agency, Inc. (Consolidated). Also named as defendant is the Bank of Carbondale, which advanced the funds for debtor's premium payments on the policies pursuant to an assignment of a retail installment contract between debtor and Consolidated. Consolidated has filed a motion for relief from stay so that it may terminate the policies and apply the unearned premiums to its debt or, alternatively, receive adequate protection payments under 11 U.S.C. section 361(1). The issue before the Court is whether Consolidated is a secured creditor with an enforceable lien upon the unearned premiums of debtor's insurance policies.

On November 17, 1988, debtor purchased four insurance policies from Consolidated and executed a "retail installment contract" for payment of the premiums in the amount of $51,374. The contract provided that debtor would make a down payment and nine monthly payments to Consolidated for the "goods" purchased, which were described in the appropriate space as "Services: Insurance Premiums." On that portion of the form providing for "Security," the box giving the seller a security interest in the "goods or property being purchased" was not marked. The printed language of the contract stated:

· Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof, to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder.

The reverse side of the printed form provided further:

Seller reserves title to said goods and shall have a purchase money security interest therein under the Illinois Uniform Commercial Code until the total of

payments and all other amounts due from Buyer hereunder are paid in full.

This contract was assigned by Consolidated to the Bank of Carbondale. Debtor subsequently defaulted on its premium payments, and Consolidated was required to make the monthly payments under the contract to the Bank of Carbondale.[1]

The four policies purchased under the retail installment contract included a one-year liability policy issued by the Great American Insurance Company. This policy was a renewal of a policy for the previous year that expired on September 22, 1988. The premium for this policy was based on the payroll or receipts of the insured, and the policy contained a clause providing for an audit at the termination of the policy to adjust the premium by credit or debit once the actual figures were known. The audit for the year 1987–1988, conducted after termination of the policy in September 1988, showed that debtor owed a balance of $30,747.50 for that year's premium.

On December 19, 1988, debtor executed a "premium finance contract" with Consolidated and the First National Bank & Trust Company of Murphysboro (First Bank of Murphysboro) to provide for payment of the amount found to be due under the audit. By this contract, debtor expressly assigned "as security for [payment of its indebtedness]" debtor's right to all unearned premiums payable under the policy of insurance. The contract further contained an irrevocable power of attorney giving Consolidated the right to cancel the policy in the event of debtor's default and to receive all unearned premiums on the policy.

On February 24, 1989, debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. At the time of trial on debtor's complaint, there remained due a balance of $23,019.44 on the contract to the First Bank of Murphysboro and a balance of $28,670.40 on the contract to the Bank of Carbondale.

In arguing that Consolidated has no right as a secured creditor to cancel debtor's policies and receive the unearned premiums, debtor asserts that the retail installment contract executed in November 1988 neither created a security interest in the unearned premiums nor gave Consolidated the right to cancel the policies currently in effect. Debtor argues, moreover, that while the premium finance contract executed in December 1988 was in the proper form to create a security interest, there were no unearned premiums remaining on the policy that expired in September 1988 and thus there was no *res* to which the security interest could attach.

Consolidated, for its part, asserts that the retail installment contract of November 1988 was effective to create a security interest in Consolidated notwithstanding the lack of a specific grant of such interest because of the contract's provision for retention of title by the seller. Consolidated further contends that it was not necessary for Consolidated, as a secured party, to have a power of attorney in order to enforce its security interest. Finally, Consolidated maintains that the parties intended for the December 1988 contract to the First Bank of Murphysboro to be secured by the unearned premiums on the successor policy that was renewed in November 1988 and that the parties' intention regarding this transaction should be given effect.

The parties concede that the transactions in question are not governed by the Uniform Commercial Code (UCC), as section 9–104(g) specifically excludes from application of the Code the "transfer of an interest or claim in or under any policy of insurance." *See* Ill.Rev.Stat., ch. 26, par. 9–104(g); *In re U.S. Repeating Arms Co.,* 67 B.R. 990 (Bankr.D.Conn.1986). Exclusion from the UCC, however, does not mean that rights under an insurance policy may not serve as collateral. Rather, "the draftsmen [of the UCC] felt that such transactions are adequately covered by existing law and do not fit within the framework of Article 9." Ill.Ann.Stat., ch. 26,

---

1. While the contract itself provides that the assignment is "without recourse" against the seller (Consolidated), the parties at trial indicated that Consolidated was a "guarantor or cosignor" and liable for the premiums if they were not paid by debtor.

**554**

par. 9–104 (Smith–Hurd 1974) (Illinois Code Comment at 51).

Because Article 9 is inapplicable, the Court must look to non-UCC state law to determine whether the agreements executed by the parties were effective to give Consolidated a perfected security interest in the unearned premiums of debtor's policies. *See In re Duke Roofing Co.*, 47 B.R. 990 (E.D.Mich.1985). The parties have cited no Illinois case, and the Court has found none, involving an insurance premium finance arrangement like that in the instant case. The Illinois statute governing premium finance companies (Ill.Rev.Stat., ch. 73, pars. 1065.60 to 1065.68) likewise provides no guidance as to the requisites for obtaining a security interest in unearned insurance premiums.

Courts in other jurisdictions have applied general common law principles of state law to evaluate agreements purporting to create a security interest in unearned premiums. As these courts have observed, premium finance agreements are common commercial transactions in which the finance company makes an advance to the insurance company or its agent of the premium due for the full term of the policy. This advance is then repaid by the insured to the finance company in amortized monthly installments which includes an additional amount to cover financing charges. The finance company is secured in making this advance by obtaining the right to cancel the policy and receive the return premium due upon cancellation if timely repayments are not made. *In re U.S. Repeating Arms Co.; In re RBS Industries*, 67 B.R. 946 (Bankr.D.Conn.1986); *Matter of Redfeather Fast Freight*, 1 B.R. 446 (Bankr.D. Neb.1979); *see Baker & Co. v. Preferred Risk Mutual Insurance Co.*, 569 F.2d 1347 (5th Cir.1978).

■ A security interest in unearned premiums is created when the premium finance company makes full payment of the premiums due and, in return, through an assignment effective under state law, receives the right to any unearned premiums following default of the insured. *See U.S. Repeating Arms Co.; Redfeather Fast*

*Freight.* Since the transaction is not governed by the UCC, an express grant of security interest is not required; however, there must be an effective assignment of the insured's right to unearned premiums. *In re U.S. Repeating Arms Co.* In order that the financing party may have recourse to the collateral securing its loan, moreover, it is necessary to obtain from the insured the right to cancel the policies in the event of nonpayment. *See In re RBS Industries; Matter of Maplewood Poultry Co.*, 2 B.R. 550 (Bankr.D.Me.1980); *see also Premium Financing Specialists, Inc. v. Lindsey*, 11 B.R. 135 (E.D.Ark.1981).

■ It is apparent to the Court that the "retail installment contract" form executed by the parties on November 17, 1988, to finance the payment of premiums on the current year's policies was an inappropriate form for this purpose. The printed language of the form indicates that it was intended for use in dealer financing arrangements subject to the UCC. Under Illinois law, however, no particular form of words or language is necessary to effect an assignment, and any language or instrument is sufficient which shows an intention of transferring a designated right, claim or fund to the assignee. *See In re Long Chevrolet*, 79 B.R. 759 (N.D.Ill.1987); *In re Estate of Martinek*, 140 Ill.App.3d 621, 94 Ill.Dec. 939, 488 N.E.2d 1332 (1986); 3 Ill. L. & Prac. *Assignments*, section 31 at 447 (1953). Thus, if the retail installment contract otherwise complies with the requirements for creating a security interest in debtor's unearned insurance premiums, it may be given effect despite its incorrect form.

As set forth above, the parties did not check the box on the form granting Consolidated a security interest in the "goods or property being purchased," which, if they had done so, would have constituted an assignment of debtor's rights to unearned premiums. *Cf. In re RBS Industries*: express grant of security interest in unearned premiums effected assignment. While the printed form contains additional language purporting to give the seller rights as a secured creditor under the UCC, it is doubt-

ful whether this language should be interpreted as a common law assignment. *Cf. In re Key West Restaurant & Lounge,* 54 B.R. 978 (Bankr.N.D.Ill.1985): assignee of interest under insurance policy must stand on his own contractual rights and does not receive the statutory rights of secured creditor protected by Article 9.

■ Even if, however, the contract were found to constitute an assignment of debtor's rights to unearned premiums, it is deficient in that it contains no power of attorney or other authority for Consolidated to cancel debtor's policies in order to receive the unearned premiums. Since the unearned premiums become payable only upon cancellation of the policies, any right to unearned premiums would be a nullity without the means to cancel the policies. For this reason, the Court finds that the retail installment contract of November 17, 1988, was ineffective to give Consolidated a security interest in the unearned premiums of debtor's policies.[2]

■ The "premium finance contract" executed in December 1988, by contrast, is in the correct form to give Consolidated a security interest in unearned insurance premiums, as it both assigns debtor's right to unearned premiums and gives Consolidated an irrevocable power of attorney to cancel the policies. By its terms, however, this contract relates to the insurance policy that expired on September 22, 1988. Because the period of the policy had run, the entire premium paid by debtor on the effective date of the policy had become earned, and there was no unearned premium remaining on the policy to be refunded to debtor upon cancellation.[3] While Consolidated argues that the parties intended for this contract to be secured by the unearned premium on

the successor policy that was funded in November 1988, this is contrary to the express language of the contract, and the Court is unable to rewrite the contract as Consolidated urges to make it applicable to the current year's policy. The Court finds, therefore, that the "premium finance contract" of December 1988 gave Consolidated no right to the unearned premiums of the policies purchased by debtor in November 1988.

Pursuant to this Court's finding that Consolidated has no security interest in the unearned premiums of debtor's policies, it will deny Consolidated's motion seeking relief from stay or the payment of adequate protection. The Court will, further, enter judgment for debtor on its complaint to enjoin the termination of insurance policies, as the Court finds that neither the "retail installment contract" nor the "premium finance contract" give defendants authority to cancel debtor's policies.

IT IS ORDERED, therefore, that Consolidated's motion for relief from stay is DENIED.

IT IS FURTHER ORDERED that defendants are ENJOINED from taking any action to terminate debtor's insurance policies # PAC8–81–37–01–02, # 524–105741–7, # PROO–93–11–92–00, # SL–9238275–00.

---

2. The Court finds no merit in Consolidated's argument that a security interest was created by the contract provision for retention of title in the seller. This theory is inconsistent with the case law relating to security interests in unearned insurance premiums, and Consolidated has cited no authority in support of its position. While Consolidated further indicates that it has rights as legal title holder of the policies themselves, Consolidated did not tender the policies in evidence; thus, there is no evidence which

would support a finding by the Court in this regard.

3. At the time an insurance policy is funded by payment of the premium on the effective date of the policy, the entire premium is unearned. On each date thereafter the unearned portion of the premium is reduced and the earned portion is proportionately increased until expiration of the policy, when no unearned premiums remain. *See In re RBS Industries.*