A97A0273. PAULSEN STREET INVESTORS v. EBCO GENERAL AGENCIES.
A97A0274. CNL/INSURANCE AMERICA, INC. v. PAULSEN STREET INVESTORS.

(481 SE2d 246)

ELDRIDGE, Judge.

Appellant Paulsen Street Investors, a Georgia limited partnership, was created on November 1, 1990, for the purpose of lending money to Agency Premium Finance Company (APF) to finance automobile premiums for insurance policies written by Bill Williams, Inc. Bill Williams, Inc. placed the automobile liability policies through appellees CNL/Insurance America, Inc. (CNL), EBCO General Agencies (EBCO), and Insurance Services Underwriters, Inc. (ISU). Periodically, insureds would fail to pay their monthly payments under the premium financing agreement and APF would give notice of cancellation of the insurance to the insurers; the insurers would then refund unearned premiums directly to the financing company, APF. However, CNL, EBCO, and ISU ceased to pay unearned premium refunds to APF but, instead, paid the refunds to Bill Williams, Inc.

Appellant gave APF a $100,000 line of credit, but APF exceeded such amount so that $590,000 was owed; some $300,000 of this sum was unearned insurance premiums which should have flowed through APF to appellant, but instead were paid by appellees to Bill Williams, Inc.

To secure its line of credit, appellant entered into a written security agreement with APF on November 5, 1990. Such security agreement gave an assignment to appellant of "all accounts receivable of APF, whether now or hereafter existing or acquired," and "account receivable" was defined in the security agreement as "any right of APF to payment of money presently due or to become due from third parties for automobile insurance premiums financed by APF." APF received from the insureds a premium financing agreement which set out the fees, penalties, and repayment of premiums for the insurance and which also provided that APF could cancel the insurance upon non-payment of premiums and receive back from the insurer any unearned premiums. Appellant, on November 9, 1990, filed a Uniform Commercial Code-1 financing statement covering

"[a]ll accounts receivable, promissory notes, chattel paper and instruments held by the debtor and all proceeds derived therefrom."

CNL, ISU, and EBCO, acting independently of each other at all times but in similar transactions, went to an account current accounting method by which Bill Williams, Inc. would retain all premiums paid and financed by APF, and at the end of each month the insurer or the insurer's agent would account for all policies submitted by Bill Williams, Inc. and determine how much was then due. After notice of the amounts due, Bill Williams, Inc. was obligated to pay such amount to the insurer or its agent. The insurer or agent credited unearned premiums to the account of Bill Williams, Inc. and no longer paid such unearned premiums to APF. When neither APF nor Bill Williams, Inc. repaid the debt to appellant, it brought suit against them, as well as the appellees. On June 28, 1995, the trial court granted appellant's motion for summary judgment against APF and Bill Williams, Inc. on the debt.

Appellees all filed separate general motions for summary judgment based upon a number of defenses which were never ruled upon by the trial court; therefore, the factual basis and legal issues are omitted as outside the jurisdiction of this Court, absent a ruling by the trial court. However, each appellee raised the issue of the standing of appellant to sue them for unearned premiums not returned to APF. On March 13, 1996, the trial court granted the motions for summary judgment on the standing issue alone, finding that accounts receivable under the UCC did not include the unearned insurance premiums, which were defined as general intangibles under the UCC definition. Appeal was timely filed on April 11, 1996.

### Case No. A97A0273

Appellant's sole enumeration is that the trial court erred in determining that the unearned insurance premiums constituted general intangibles under the Georgia Uniform Commercial Code and that appellant, therefore, does not have standing to assert its claims against the appellees.

OCGA § 11-9-104 reads, in part, "[t]his article [Secured Transactions] does not apply: . . . (f) [t]o a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (Code Section 11-9-306) and priorities in proceeds (Code Section 11-9-312)."

An assignment of returned or unearned insurance premiums is a security interest. *Edmondson v. Allen-Russell Ford*, 577 F2d 291 (5th Cir. 1978). "The assignment in this case, although not specifically listed, is a security interest because it is an interest in property which secures payment of an obligation. . . . We think it clear beyond

peradventure that the assignment of returned or unearned premiums . . . confers on the creditor an interest in property which helps to secure payment or performance of contractual obligations. . . . Returned or unearned premiums are in no sense a substitute for the specified collateral . . . and cannot be held to constitute its proceeds. . . . These premiums might be proceeds of the insurance policy, but they are not proceeds of the [collateral]. . . ." (Citations and punctuation omitted.) Id. at 294, 296; see also *Gennuso v. Commercial Bank &c. Co.*, 566 F2d 437 (3rd Cir. 1977); *Blalock v. Aetna Finance Co.*, 511 FSupp. 33 (N.D. Ga. 1980).

While not interpreted in Georgia, the statutory language of OCGA § 11-9-104 (f) has been uniformly held in other jurisdictions to exclude insurance and returned or unearned insurance premiums from the UCC. *In re Braniff Intl. Airlines*, 164 B. R. 820 (N.Y. 1994); *In re Big Squaw Mountain Corp.*, 122 B. R. 831 (Me. 1990); *In re Uly-Pak*, 101 B. R. 551 (Ill. 1989); *In re Universal Motor Express*, 72 B. R. 208 (N.C. 1987); *In re U. S. Repeating Arms Co.*, 67 B. R. 990 (Conn. 1986); *In re Duke Roofing Co.*, 47 B. R. 990 (Mich. 1985); *In the Matter of Rogers*, 6 B. R. 472 (Iowa 1980); *In the Matter of Redfeather Fast Freight*, 1 B. R. 446 (Neb. 1979). Thus, the security agreement does not come within the ambit of the UCC, as it is expressly excluded. Therefore, the UCC definitions do not control.

"A chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." OCGA § 44-12-20. OCGA §§ 44-12-20 and 44-12-22 made choses in action assignable where an interest in property was involved. Choses in action include the proceeds from a contract performance and are assignable. See *Eibel v. Mechanics Loan &c. Co.*, 52 Ga. App. 349 (183 SE 133) (1935). Accounts are also assignable and can be sued upon. *Mordecai v. Stewart*, 37 Ga. 364 (1867); *Southern R. Co. v. Pitner & Raines*, 17 Ga. App. 451 (87 SE 754) (1916). A chose in action is the right of a creditor to be paid on a debt owed by a debtor. *Water Processing Co. v. Toporek*, 158 Ga. App. 502 (280 SE2d 901) (1981), rev'd on other grounds, *Water Processing Co. v. Southern Golf Builders*, 248 Ga. 597 (285 SE2d 21) (1981). A chose in action is a debt that the creditor has a right of immediate or future possession. *In re Burnham*, 12 B. R. 286 (Ga. 1981).

In the case sub judice, each insured signed a written premium financing agreement which gave APF the right to the statutory fees and penalties, the right to repayment of the advanced insurance premium, and the right to cancel the insurance and have the unearned premium returned to APF by the insurer or its agent in the event of non-payment of the installments to APF. This contract was an account receivable and includes all the bundle of rights to future payment or return of money. Such premium financing agreement and its

terms were statutorily imposed. OCGA § 33-22-1 et seq.

A security interest is created by statute on behalf of the premium financer when the insured signs the insurance premium finance agreement. OCGA §§ 33-22-8; 33-22-11. If the premium finance company gives notice to the insurance company, then the insurer has a statutory, non-delegable duty to return upon cancellation the unearned premium to the source of the premium payment, the premium financing company. OCGA §§ 33-22-12; 33-22-14; see *Ga. Mut. Ins. Co. v. Gardner*, 205 Ga. App. 458 (422 SE2d 324) (1992); *Ga. Ins. Co. v. White*, 190 Ga. App. 208, 210-211 (378 SE2d 523) (1989); *Capitol Premium Plan v. Integrity Ins. Co.*, 182 Ga. App. 620 (356 SE2d 897) (1987); *Intl. Indem. Co. v. Bakco Acceptance*, 172 Ga. App. 28, 29 (1) (322 SE2d 78) (1984); *Perry & Co. v. Knight Ins. Underwriters*, 149 Ga. App. 128 (253 SE2d 808) (1979).

A premium finance company has a statutorily mandated and regulated account receivable in the premium financing agreement. OCGA § 33-22-8. Under such contract, it receives statutory fees and penalties along with the repayment of the premium. OCGA §§ 33-22-9; 33-22-10. In the event of cancellation, the premium financing company gets the return of the unearned portion of the insurance premium that it paid to the insurer on behalf of the insured. OCGA § 33-22-14. Therefore, the premium financing agreement with the insured constitutes an account receivable entitling the finance company to recapture its principle one way or the other, as well as any fees and penalties. *In re Uly-Pak*, supra at 554; *In re Repeating Arms Co.*, supra; *In the Matter of Redfeather Fast Freight*, supra.

The premium finance company can transfer and assign such premium finance agreement and, more particularly, the *right* to the return of unpaid premiums; such transaction is governed by common law or statute outside the UCC, which expressly exempts insurance. *In re Uly-Pak*, supra; *In the Matter of Rogers*, supra at 474; *In the Matter of Redfeather Fast Freight*, supra at 450.

OCGA § 33-22-14 creates a chose in action or statutory lien right in the unearned premiums in favor of the premium finance company; there are property rights which are assignable under OCGA §§ 44-12-22; 44-12-24; 44-14-325; 44-14-326. Appellant's "Revolving Line of Credit and Security Agreement" with APF created a general assignment of all the premium financing agreements with the insureds as accounts receivable.

Any language in writing agreed to by both parties is sufficient to vest title of such personalty in an assignee. *Southern &c. Ins. Assn. v. Durdin*, 132 Ga. 495 (64 SE 264) (1909); *William Iselin & Co. v. Davis*, 157 Ga. App. 739 (278 SE2d 442) (1981); *Lumpkin v. American Surety Co.*, 61 Ga. App. 777 (7 SE2d 687) (1940); see also *Haug v. Riley*, 101 Ga. 372 (29 SE 44) (1897); *McLanahan v. Keith*, 135 Ga.

App. 117 (217 SE2d 420) (1975). Thus, appellant's written security agreement with APF assigned to appellant all of APF's interest in the various premium financing agreements of the insureds, which gave appellant standing to bring suit on its right to the return of unearned premiums. The trial court erred in granting summary judgment on the issue of standing.

### Case No. A97A0274

CNL, cross-appellant, appeals from the denial of its motion to sever the trial of the cases of the appellee from the other appellees, because the claims against it did not arise out of the same facts and circumstances, but from similar facts and circumstances; there is no contention that it acted in concert or conspiracy with the other appellees.

OCGA § 9-11-42 is not identical with the Federal Rules of Civil Procedure upon which the Civil Practice Act was based because the General Assembly wished to limit the power of the trial court to consolidate cases for trial. Compare Federal Rules of Civil Procedure, Rule 42, 28 USC; *Vitner v. Funk*, 182 Ga. App. 39, 40-42 (1) (354 SE2d 666) (1987). The General Assembly required consent for consolidation of cases involving a common question of law or fact. OCGA § 9-11-42 (a). This case does not involve common questions of law or fact, but similar questions of law and fact; thus, it is distinguishable from *Branch v. Maxwell*, 203 Ga. App. 553, 554 (1) (417 SE2d 176) (1992), which involved the right for a third party to intervene in an action. Sound judicial economy may justify these cases being tried together by consent. However, this Court has held that when the questions of law and fact are similar, but not the same, it is an abuse of the trial court's discretion to refuse severance upon timely motion. *Brinks, Inc. v. Robinson*, 215 Ga. App. 865 (452 SE2d 788) (1994); *Howard Motor Co. v. Swint*, 214 Ga. App. 682 (448 SE2d 713) (1994); see also *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226 (476 SE2d 565) (1996). The trial court abused its discretion in denying the motion to sever.

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1997.

*Inglesby, Falligant, Horne, Courington & Nash, Thomas A. Nash, Jr.*, for Paulsen Street Investors.

*Lane, O'Brien & Caswell, Stephen J. Caswell, David E. Keystone, Bross & Saginar, Gary W. Bross, Gary L. Wimbish*, for EBCO General Agencies.

*Arnall, Golden & Gregory, Jerome L. Kaplan, Ronald C. Thomason*, for CNL/Insurance America, Inc.