A98A2117. PAULSEN STREET INVESTORS v. EBCO GENERAL AGENCIES et al.
(514 SE2d 904)

SMITH, Judge.

This case appears before us for the second time. In *Paulsen Street Investors v. EBCO Gen. Agencies*, 224 Ga. App. 507 (481 SE2d 246) (1997) ("*Paulsen Street I*"), we determined that appellant Paulsen Street Investors, a limited partnership ("Paulsen Street") had standing to bring this action as an assignee of Agency Premium Finance Company ("APF"). Now we consider the issue of whether a premium finance company must be licensed under the provisions of OCGA §§ 33-22-1 through 33-22-16, the Insurance Premium Finance Company Act, before it may make a claim under the provisions of that law for the return of unearned premiums on cancelled policies. Because we find the Act is intended to create a regulatory scheme, we conclude that APF's failure to obtain a license bars any right of recovery by Paulsen Street, and we affirm the trial court's grant of summary judgment.

A recitation of the underlying facts may be found in *Paulsen Street I*, supra. As noted in that opinion, Paulsen Street has obtained a judgment against both Bill Williams, Inc. and APF for sums advanced on a line of credit. Id. at 508. Paulsen Street, as the assignee of APF under its written security agreement, also asserted claims against appellees CNL/Insurance America, Inc., EBCO Gen-

---

eral Agencies, and Insurance Service Underwriters, Inc. (collectively "appellees") for the return of certain unearned premiums on automobile insurance policies issued by Bill Williams, Inc. and financed through APF. Id. at 507-508. The unearned premiums were instead returned to Bill Williams, Inc. by appellees. Id. at 507. The record shows that Bill Williams, Inc. "d/b/a Agency Premium Finance Co." was licensed as an insurance premium finance company with the State Insurance Commissioner, while APF was not.

In *Paulsen Street I,* this court found that the written security agreement between APF and Paulsen Street "gave an assignment to appellant of 'all accounts receivable of APF, whether now or hereafter existing or acquired.'" Id. at 507. As a result, Paulsen Street had standing as the assignee of APF to bring suit on its right to the return of unearned premiums. Id. at 511.

After the case returned to the trial court, Paulsen Street moved for summary judgment, and appellees filed cross-motions for summary judgment. After initially denying summary judgment to all parties, the trial court on its own motion reconsidered its ruling and granted appellees' motions. In a thorough and well-reasoned order, the trial court discussed at length APF's failure to obtain the license required by OCGA § 33-22-3 before engaging in the business of financing insurance premiums. From this order, Paulsen Street appeals.

1. In considering the trial court's ruling, we first note the well-established principle of Georgia law that an assignee of a contract acquires its rights from the assignor, has no more rights under the contract than the assignor, and is subject to all defenses that could have been raised against the assignor. *Pridgen v. Auto-Owners Ins. Co.,* 204 Ga. App. 322, 323 (419 SE2d 99) (1992). Since Paulsen Street acquired its interest in the return of unearned premiums through its financing agreement with APF, it can assert its claims only to the extent of APF's rights.

APF's right to the return of unearned premiums is created by OCGA § 33-22-14 (a). This provision of the Insurance Premium Finance Company Act states, in pertinent part:

> Whenever an insurance policy is canceled and the premiums have been paid by an insurance premium finance company on behalf of the insured, if the insurer has been notified of the existence of the insurance premium finance agreement as required in Code Section 33-22-12, the insurer shall return whatever unearned premiums are due to the insurance premium finance company for the account of the insured. Whenever an insurer, after receiving notification of the existence of the insurance premium finance agreement,

returns any unearned premium to anyone other than the insurance premium finance company named in the agreement, the insurer shall be directly responsible to such insurance premium finance company for any and all unearned premiums due as a result of the cancellation.

But this provision must be construed in harmony with another section of the Insurance Premium Finance Company Act, OCGA § 33-22-3 (a), which provides: "No person shall engage in the business of financing insurance premiums in this state without first having obtained a license as a premium finance company from the Commissioner." While Paulsen Street acknowledges that APF failed to register as a premium finance company, it contends that no such registration and license are necessary to recover under OCGA § 33-22-14. This contention is without merit.

Under well-established Georgia law,

[w]here a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable. Accordingly, at whatever stage of the proceedings it appears that the plaintiff is seeking to recover upon a contract permitted to be entered into only by persons holding licenses issued as a regulatory measure, it becomes imperative for the plaintiff to prove that he holds such a license and held such license at the time the contract was entered into in order to authorize a recovery.

(Citations and punctuation omitted.) *Bowers v. Howell*, 203 Ga. App. 636-637 (1) (417 SE2d 392) (1992).

It is obvious from the Act itself that it is intended for the regulation of a business in the public interest rather than merely for revenue production. A license cannot be issued until the Insurance Commissioner is satisfied that the person to be licensed is competent and trustworthy; has a good business reputation and is qualified in terms of experience, training, or education; if a corporation, is incorporated or authorized to transact business under the laws of Georgia; and "[w]ill contribute to and promote the convenience and advantage of the citizens of this state." OCGA § 33-22-4 (b) (1)-(4). Applicants for a license are required to meet certain capital requirements and make provision for the deposit of securities or filing of a bond with the

Commissioner. OCGA § 33-22-5. The Commissioner also is vested with the authority to demand and to inspect the holder's records "at any time." OCGA § 33-22-7 (c). Finally, the license can be revoked on a variety of substantive grounds, including the holder's misappropriation of funds, unsound condition or a condition that would "render the future transaction of business in this state hazardous to the public," violation of the provisions of the Act, or if "[t]he holder of the license has otherwise shown himself untrustworthy or incompetent to act as a premium finance company." OCGA § 33-22-6 (a) (3)-(6).

We conclude that the required license is regulatory in nature, and that the failure of APF to obtain a license in its own name forecloses any claim it had against appellees under OCGA § 33-22-14 for the return of unearned premiums. Because Paulsen Street has no more right to the unearned premiums than could be assigned to it by APF, its claim must fail.

Paulsen Street argues that OCGA § 33-22-14 (a) is a statutory rather than a contractual remedy and thus not subject to the controlling law. But the statute itself repeatedly refers to the "insurance premium finance agreement" and to the unearned premiums due under its terms. Any recovery under OCGA § 33-22-14 (a) therefore derives from the underlying agreement; if that contract is void and unenforceable, it will not support a recovery, and no right exists to be enforced by the statute.

Paulsen Street also argues that a distinction may be drawn between a "licensee" and an "insurance premium finance company," separately defined in OCGA § 33-22-2 (2) and (3), so that an unlicensed entity illegally doing business as an "insurance premium finance company" may nevertheless recover under OCGA § 33-22-14, because that portion of the Act does not contain the word "licensee." We note that the Act appears to use the term "insurance premium finance company" or "premium finance company" interchangeably with "licensee" throughout. More importantly, we will not construe a statute so as to render any portion of it meaningless, and we must reconcile, if possible, any potential conflicts between different sections in light of the entire statutory scheme and the legislative intent. *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997). Paulsen Street's argument would render the legislative requirements of licensing, investigation, and inspection by the Insurance Commissioner wholly meaningless; an individual or entity could operate as a premium finance company and reap the benefits of the statutory scheme without submitting to any of the law's requirements or responsibilities. This result would be contrary to the intention of the legislature and the decisions of this court. As we have observed in the past, the strict rule barring recovery "has been held to be necessary to compel compliance with the licensure requirement. [Cit.]" *Mgmt.*

*Compensation Group/Southeast v. United Security Employee Programs,* 194 Ga. App. 99, 101 (2) (389 SE2d 525) (1989).

The facts of this case demonstrate the potential for confusion and even fraud if the licensing requirement is not strictly enforced. OCGA § 33-22-14 (a) provides that an insurer shall be directly responsible to a premium finance company when it "returns any unearned premium to anyone other than the insurance premium finance company named in the agreement." But the only license in the record was issued in the name of "Bill Williams, Inc. d/b/a Agency Premium Finance Co." The contracts with insureds identified the entity only as "Agency Premium Finance Co." Appellees could have reasonably believed, on account of APF's failure to obtain a license, that "Agency Premium Finance Co." was merely a trade name of the licensed corporation and that payment to Bill Williams, Inc. was proper.

The record also contains evidence that the financial affairs of Bill Williams, Inc. and APF were interrelated and that Paulsen Street, through its principal, was aware of this relationship. Paulsen Street's general partner, Jackson, provided accounting services to Bill Williams, Inc. He was also the secretary/treasurer of APF and provided accounting services for APF. He signed the security agreement both as general partner of Paulsen Street and as secretary of APF. On behalf of Paulsen Street, Jackson himself wrote checks to both Bill Williams, Inc. and APF to fund the revolving line of credit, and Bill Williams, Inc. forwarded premium funds to insurers or general agents. Jackson also testified that APF's employees were paid through Bill Williams, Inc.

Under these circumstances, enforcing an obligation to return unearned premiums to an unlicensed entity, in preference to the licensed company itself, would be directly contrary to the intention of the statute. This is particularly true when the unlicensed entity is shown only as a trade name of a licensed premium finance company in the Commissioner's records and when the financial and business relations between the licensed and the unlicensed entity are so interrelated as to lend support to the accuracy of the license on file with the Commissioner. The trial court did not err in granting summary judgment to appellees.

2. Paulsen Street also asserts that appellees are liable on a theory of money had and received. But we need not reach this contention because Paulsen Street failed to raise it in a timely fashion below. The complaint does not state a claim for money had and received; more importantly, no such claim appears in the final pretrial order, and the record does not reflect that Paulsen Street ever amended the pretrial order to state such a claim. See *Goodman v. Frolik & Co.,* 233 Ga. App. 376, 379 (2) (504 SE2d 223) (1998).

3. Paulsen Street's remaining claims of conversion and civil Racketeer Influenced & Corrupt Organizations ("RICO") are also without merit. As the trial court recognized, all of Paulsen Street's claims derive from its written security agreement with APF. That agreement merely assigned Paulsen Street a security interest in APF's promissory notes, accounts receivable, chattel paper, and premium finance contracts.

In addition, Paulsen Street lacks standing to bring any direct action against appellees in tort, "because it was not directly harmed by any tortious act or omission by [appellees] and only indirectly suffered a loss. The right to bring a personal injury action, even for fraud, cannot be assigned or subrogated, except by statute. [Cits.]" *Generali—U. S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 281 (2) (e) (493 SE2d 731) (1997).

The tort of conversion involves an

> unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. However, the plaintiff must show title, either general or special, in himself at the time of the institution of the suit, actual possession, or right of immediate possession.

(Citations and punctuation omitted.) *King v. Crain-Daly Volkswagen*, 207 Ga. App. 583, 585 (428 SE2d 586) (1993). Here, Paulsen Street's claim of conversion is based entirely on its assertion that appellees failed to credit unearned premiums to APF in accordance with the Insurance Premium Finance Company Act. It alleges that appellees thereby converted unearned premiums owed to APF, in which Paulsen Street had an interest pursuant to its security agreement. But, as discussed above, because APF had no valid claim under the Act, it could assign no claim to unearned premiums, and Paulsen Street therefore had no title or possessory interest it could assert in the unearned premiums.

Similarly, Paulsen Street's claim under the Georgia RICO statute, OCGA §§ 16-14-1 through 16-14-15, fails because it too is based on the alleged conversion of unearned premiums. Furthermore, Paulsen Street has not shown the proximate cause required in order to maintain a claim under RICO. See *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 805-806 (500 SE2d 591) (1998). Paulsen Street has failed to show a direct causal connection between its injury, the failure of APF and Bill Williams, Inc. to repay its line of credit, and appellees' return of unearned premiums to Bill Williams, Inc.

Paulsen Street has failed to create any material issue of fact as to any theory of recovery against appellees, and the trial court correctly ruled that appellees were entitled to summary judgment.

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 18, 1999.

*Inglesby, Falligant, Horne, Courington & Nash, Thomas A. Nash, Jr., James F. Shehane IV*, for appellant.

*Lane, O'Brien & Caswell, Stephen J. Caswell, Michael A. Penn*, for appellees.