In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3373

Agco Corporation,

Plaintiff-Appellee,

v.

Max Anglin, et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP98-0050-C-T/G--John Daniel Tinder, Judge.

Argued March 2, 1999--Decided June 9, 2000

Before Cudahy, Eschbach, and Coffey, Circuit Judges.

Cudahy, Circuit Judge.  A farm equipment dealership, Silver Lake Farm Service, Inc., and its owners appeal from a district court order denying their motion to vacate an arbitration award and confirming an award for the farm equipment manufacturer AGCO. This appeal presents the question whether the arbitrators acted with the authority conferred upon them by the parties' agreement, or instead decided issues beyond those which the parties had agreed to submit to arbitration. Concluding that the arbitrators exceeded their authority, we reverse.

I.

Max and Gary Anglin own Silver Lake Farm Service, Inc., a farm implement store in Silver Lake, Indiana. In 1987 Silver Lake became a dealer of farm equipment for the Deutz-Allis Corporation. Silver Lake bought inventory from Deutz-Allis and sold it to farmers. In 1990 AGCO acquired Deutz-Allis and assumed the dealership agreement with Silver Lake.

In building its business, Silver Lake entered into a series of financing agreements. First, to help its customers obtain credit, it signed a Retail Financing Agreement in 1989 with Agricredit Acceptance Company, an equipment lease finance company. At the same time, Agricredit required the

Anglins to execute separate personal guaranties of Silver Lake's liabilities under the Retail Finance Agreement. Significantly, neither these personal guaranties nor the Retail Finance Agreement provides for arbitration.

On June 3, 1992, Silver Lake entered into a Wholesale Financing Agreement with AGCO to obtain financing to purchase inventory from AGCO. A binding arbitration provision required the Anglins and AGCO to arbitrate all disputes arising under the Agreement. On the same day, Max and Gary Anglin and their wives executed personal guaranties (the "Guaranties") of Silver Lake's indebtedness to AGCO. Each of the Guaranties (pre-printed, tiny-print forms drafted by AGCO) contained the broad arbitration provision at issue in this appeal:

BINDING ARBITRATION.  Except as otherwise specifically provided below, all actions, disputes, claims and controversies heretofore or hereafter arising out of or directly or indirectly relating to (a) this Guaranty . . . , (b) any subsequent agreement entered into between the parties hereto, (c) any previous agreement entered into between the parties hereto, (d) any relationship or business dealings between the parties hereto, and/or (e) the transactions contemplated by this Guaranty or any previous or subsequent agreement between the parties hereto . . . will be subject to and resolved by binding arbitration . . . and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

(Emphasis added.) As will become apparent, the elusive meaning of the "directly or indirectly" clause is what has given rise to this litigation.

The scope of the Guaranties is set forth in a separate provision, which also incorporates the "direct or indirect" wording:

In consideration of financing provided or to be provided by you [AGCO] to Silver Lake Farm Service, Inc. ("Dealer"), . . . we [the Anglins] . . . guaranty to you [AGCO] . . . the immediate payment of all current and future liabilities owed by Dealer to you when due, whether such liabilities are direct or indirect.

(Emphasis added.)

By late 1992 AGCO was forging a close relationship with Agricredit. In November, unknown to the Anglins, AGCO entered into an Operating Agreement with Agricredit, under which AGCO agreed to purchase any retail finance contract on which the purchase price warranty had

been breached. Soon thereafter (the precise time is not clear from the record), AGCO acquired Agricredit./1

Some time in 1994, Silver Lake began receiving complaints of irregularities in a number of retail contracts with customers. Although the record is sketchy, the circumstances surrounding six contracts--all of which were signed between 1992 and 1994 and then assigned to Agricredit-- have given rise to charges of fraud against Silver Lake. These charges are not before us in this appeal. What is before us--according to AGCO--are Silver Lake's retail obligations to Agricredit (the "Retail Obligations"), which AGCO insists are covered by the broad arbitration clause in the Guaranties. AGCO took assignment of these Retail Obligations from Agricredit in July and August 1995, several months after Silver Lake's default led AGCO to terminate the dealership agreement and the Wholesale Finance Agreement.

In October 1995 AGCO sought arbitration against Silver Lake and the Anglins based upon the arbitration provision contained in the Guaranties. Asserting fraud and breach of contract claims against a Silver Lake manager (who the Anglins assert in their brief "has since disappeared"), AGCO complained about the six contracts executed by Silver Lake customers that involved Agricredit financing. In its written demand for arbitration, AGCO somewhat diffusely characterized the nature of its dispute as a "Claim under Dealer Contract for defaults/fraud under recourse consumer financing agreements and for unpaid wholegood sales; claims against guarantors for payment of principal obligor's liabilities." The matter was submitted to an arbitration panel of the American Arbitration Association, which conducted a three-day hearing in September 1997. No transcript was created.

In November 1997 the arbitration panel issued its ruling. Although the arbitrators submitted no findings of fact or law, they apparently determined that the arbitration clause in the Guaranties authorized them to consider the disputed retail contracts, even though those contracts involved not AGCO but Agricredit, a nonsignatory to the Guaranties. The arbitrators declared Silver Lake liable to AGCO for the debts arising from five contracts; denied Silver Lake's counterclaim for wrongful termination of its dealership; and awarded AGCO damages of $148,517 plus attorney's fees.

In January 1998 AGCO petitioned the district court under the Federal Arbitration Act, 9 U.S.C. sec. 1 et seq., to confirm the award. The Anglins promptly moved to vacate or modify the award

largely on the basis that the arbitrators exceeded their powers by considering issues outside the scope of the arbitration agreement. The district court denied the Anglins' motion and confirmed the award. It held that the arbitration provision in the Guaranties authorized AGCO to arbitrate a dispute with the Anglins over Silver Lake's Retail Obligations to Agricredit because that dispute directly or indirectly related to the Anglins' Guaranties:

[A] direct liability would be a liability of Silver Lake to AGCO under the Wholesale Financing Agreement or under the Dealer Agreement. An indirect liability would be a liability of Silver Lake to AGCO through a liability of Silver Lake to Agricredit, AGCO's wholly owned subsidiary, under the Retail Financing Agreement.

(Dist. Ct. Order of 8/25/98, at 14.) This appeal followed.

II.

We first consider whether the Anglins waived any objection to the arbitrability of the Retail Obligations when they consented to arbitration and agreed to participate in the arbitration hearing. If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter. See Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO, 760 F.2d 173, 175-76 (7th Cir. 1985). If, however, a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court. International Ass'n of Machinists & Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc., 900 F.2d 1005, 1009 (7th Cir. 1990). The record suggests that the Anglins have followed the latter course.

Although no transcript was made of the arbitration proceedings, it is undisputed that counsel for the Anglins objected to arbitration of the Retail Obligations. In the district court, counsel recounted that he registered his objections once the parties "discovered" on the "first or second day of arbitration" that the Anglins had also executed personal guaranties of the Retail Financing Agreement:

At that point, on behalf of the Anglins, I moved for one of two things: Either that the arbitration be dismissed because there was no basis for it under the retail guaranties; or, that if AGCO wanted to proceed with the

[arbitration], they do so solely under the Wholesale Guaranties and stipulate to no claim based on the retail guaranties. [AGCO] stipulated they were making absolutely no claim under the retail guaranties and that those retail guaranties were not to be considered by the arbitrators.

(Tr. of Dist. Ct. Hearing of 3/6/98, at 26-27.) Like the defendant in Fansteel, counsel for the Anglins "carefully and explicitly, in unambiguous language, made known to the arbitrator[s] and [AGCO their] clear intention" to preserve their objection to the arbitrability of the Retail Obligations, even though they agreed to proceed with the arbitration hearing. Fansteel, 900 F.2d at 1009. The Anglins therefore did not waive their right to object to the scope of the arbitration.

We turn to the question whether the arbitrators went beyond the scope of the authority conferred upon them by the parties. Arbitrators have the authority to decide only those issues actually submitted by the parties. American Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon, 185 F.3d 832, 835 (7th Cir. 1999). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes-- that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, although the Federal Arbitration Act embodies a clear federal policy favoring arbitration agreements, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), such agreements must not be so broadly construed as to encompass claims that were not intended to be arbitrated under the original contract. As with any contract, the touchstone for interpreting an arbitration clause must be the intention of the parties. Grundstad v. Ritt, 106 F.3d 201, 204 (7th Cir. 1997); Matteson v. Ryder Sys. Inc., 99 F.3d 108, 114 (3d Cir. 1996). Therefore, while keeping in mind the federal policy favoring arbitration, we must consider whether the Anglins and AGCO intended for their dispute over the Retail Obligations to be arbitrated. Our review is extremely limited: we may vacate an arbitration award only in narrowly defined cases, such as when "the arbitrators exceeded their power." 9 U.S.C. sec. 10(a)(4). Further, we review findings of fact for clear error and decide questions of law de novo. Publicis Communication v. True North Communications, Inc., 206 F.3d 725, 728 (7th Cir. 2000).

In considering the circumstances surrounding the signing of the Guaranties, we conclude that there is strong evidence that the Anglins never

intended to have the arbitration clause cover the present controversy. In reaching this conclusion, we rely on essentially three factors. First, the arbitration clause did not seek to incorporate by reference any provisions of the Retail Financing Agreement; it expressly limited itself to disputes concerning either the Guaranties or other transactions between the two parties. Second, at the time the Anglins entered into the Guaranties, on June 3, 1992, AGCO had not yet agreed to repurchase Agricredit's debt--such a repurchasing agreement was not signed until five months later, in November 1992. Third, the Anglins signed their Guaranties before AGCO acquired Agricredit as a subsidiary; because the two companies shared no corporate identity as of June 3, 1992, the Anglins had no reason to suspect that their arbitration agreement with AGCO would expand to encompass a dispute with Agricredit, a nonsignatory. See, e.g., Kissun v. Humana, 479 S.E.2d 751, 753 (Ga. 1997) ("[P]iercing the corporate veil results in disregard for the separate existence of parent and subsidiary.").

This case resembles Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250 (7th Cir. 1994), in which we held that an arbitrator exceeded his power by arbitrating a dispute involving a third party not a signatory to the arbitration agreement. Eljer Manufacturing, Inc. was the parent corporation of the Simonds Division, a producer of metal files. Simonds entered into an agreement with Kowin Development, Inc. to form a company called Kowin-Simonds, Inc. that would participate in a Chinese joint venture to manufacture files in China. Both Kowin and Simonds agreed to arbitrate "any dispute" arising under their agreement. Id. at 1252 n.1. Some time later, Simonds--to aid the joint venture project--sold equipment to the Bank of China, which in turn leased the equipment back to the joint venture. The joint venture subsequently failed, and Kowin sued Eljer and Simonds for fraudulently misrepresenting facts about the equipment they sold. After Eljer successfully moved to compel arbitration, an arbitrator awarded Kowin damages, including the sum that Eljer recovered from the Bank of China for the purchase of Simonds' equipment. We held that the arbitrator exceeded his powers because the arbitration clause did not authorize him to arbitrate disputes between Eljer and a third party, the Bank of China. Id. at 1257.

Like Eljer, the Anglins' dispute involves a third party, Agricredit, which is not a signatory to the arbitration agreement. The arbitration agreement contained in the Guaranties limited the arbitrators' authority to issues arising from transactions between either AGCO and Silver Lake

or AGCO and the Anglins. Eljer demonstrates that, despite the Guaranties' broad arbitration provision, the arbitrators were not authorized to consider issues arising out of the Retail Financing Agreement between Silver Lake and Agricredit. The arbitrators exceeded their authority when they considered the rights of Agricredit asserted by AGCO as a result of assignment. These rights, as the Anglins correctly point out, are nothing more than "those of a stranger to the arbitration agreement."

Moreover, it is a well-established principle of Georgia law that an assignee of a contract "stands in the shoes" of the assignor, has no more rights under the contract than the assignor, and is subject to all defenses which could have been raised against the assignor. See Paulsen St. Investors v. EBCO Gen. Agencies, 514 S.E.2d 904, 905 (Ga. Ct. App. 1999). Because AGCO acquired its interests in the Retail Obligations through assignment from Agricredit, it may assert claims only to the extent of Agricredit's rights. The Retail Obligations do not provide for arbitration. As an assignee of the Retail Obligations, AGCO is subject to the Retail Obligations' limitations-- which include the absence of an arbitration provision. AGCO may not invoke the arbitration clause under the Guaranties to arbitrate Retail Obligations that are otherwise not arbitrable.

Besides addressing the contractual underpinnings of arbitration and the nature of assignments, the Anglins also express skepticism about the expansive reach of the arbitration provision. They liken the arbitration provision to an unenforceable "dragnet" clause in a mortgage or security agreement that secures an extensive range of unanticipated debts, including those that will arise in the future. The Anglins argue that the arbitration provision, like an improper dragnet clause, is unenforceable because it fails to apprise them that it could encompass a dispute over their subsequently assigned Retail Obligations.

Georgia law, which expressly governs the Guaranties, has long recognized and enforced dragnet clauses. See, e.g., Hill v. Perkins, 127 S.E.2d 909 (Ga. 1962); Rose City Foods, Inc. v. Bank of Thomas County, 62 S.E.2d 145 (Ga. 1950). Unlike many jurisdictions that construe such clauses narrowly, see Milton Roberts, Annotation, Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts (Dragnet Clause)--Modern Status, 3 A.L.R. 4th 690 (1981 and Supp. 1999), Georgia is a "creditor's state" that has given dragnet clauses their fullest effect. In Rose City Foods, for instance,

the Georgia Supreme Court broadly construed a dragnet clause to reach preexisting obligations that the creditor had obtained from a third party. Dragnet clauses, the court observed, are a "matter of private contract" that "courts should always guard with jealous care" and "give . . . full effect when it is possible to do so." 62 S.E.2d at 148. Significantly, however, the Georgia legislature later enacted a mortgage statute to restrict the reach of dragnet clauses to "obligations arising . . . between the original parties to the security instrument." Ga. Code Ann. sec. 44-14-1(b) (formerly sec. 67-1316). This restriction thus limits Rose City Foods, see Commercial Bank v. Readd, 242 S.E.2d 25, 28 n.1 (Ga. 1978) (Hill, J., concurring); Bowen v. Kicklighter, 183 S.E.2d 10, 12 (Ga. Ct. App. 1971); Federal Deposit Ins. Corp. v. Willis, 497 F. Supp. 272, 281 (S.D. Ga. 1980), and calls into question the enforceability of the dragnet clause in this case, in which AGCO obtained the Retail Obligations through assignment after the Guaranties were signed. Indeed, other courts have disapproved of dragnet clauses encompassing debts that were originally owed by the mortgagor to third parties and subsequently assigned to the mortgagee. See, e.g., Hudson v. Bank of Leakesville, 249 So.2d 371, 374 (Miss. 1971); Wood v. Parker Square State Bank, 400 S.W.2d 898, 902 (Tex. 1966); Matter of E.A. Fretz Co., Inc., 565 F.2d 366, 372 (5th Cir. 1978); Grant S. Nelson & Dale A.Whitman, Real Estate Finance Law, sec. 12.8 at 900-902 (2d ed. 1985); 2 Grant Gilmore, Security Interests in Personal Property 918 (1965).

Further, we are mindful that the Guaranties' terms are construed against AGCO, which prepared the document. Under Georgia law any ambiguity in a guaranty is construed against the maker. See Enterprise Fin. Corp. v. Ross White Enters., Inc., 441 S.E.2d 805, 806 (Ga. Ct. App. 1994); St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 821 (11th Cir. 1999) (applying Georgia law). Although the Guaranties here speak opaquely of the debtor's "direct or indirect" liabilities, they do not mention subsequent debts that have been obtained by assignment from a third party. Like other contracts, the arbitration clause in question should be interpreted to reflect the parties' actual expectations. Because AGCO did not obtain assignment of the Retail Obligations until after the signing of the Guaranties, we doubt that the Anglins ever contemplated that their dispute with Agricredit would find its way to the arbitration table.

III.

Because the Anglins could not have contemplated

that their arbitration clause with AGCO would encompass a dispute with a nonsignatory party, we conclude that the arbitrators exceeded their authority by arbitrating the Anglins' Retail Obligations to Agricredit. We REVERSE the district court's confirmation of the arbitration award, and REMAND the case to the district court for further proceedings consistent with this order.

/1 The parties' briefs gloss over the timing of this acquisition, and the record offers no elaboration. The ambiguous chronology apparently confused the district court, which traced Agricredit's subsidiary status as far back as 1989: "In 1989, Agricredit, a wholly owned subsidiary of AGCO . . . and Silver Lake entered into a Retail Finance Agreement, dated July 31, 1989." According to AGCO's own website, however, AGCO did not acquire Agricredit until 1993 and it did not make Agricredit a wholly-owned subsidiary until the following year. See <http://www.agcocorp. com/>. The wholly-owned subsidiary status was short lived. In late 1996 AGCO sold a majority stake in Agricredit to the Dutch lending company Rabobank Nederland. See id.; AGCO Completes Global Retail Finance Joint Venture Agreement with Rabobank; Agricredit Subsidiary Forms Global Alliance with AAA-Rated Bank, PR Newswire, Nov. 4, 1996, available in LEXIS database.