**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 18, 2014**

# In the Court of Appeals of Georgia

A13A2301. THOMAS J. BURKE d/b/a AMERICAN TRANSPORT
v. PRIME RATE PREMIUM FINANCE CORPORATION.

BOGGS, Judge.

Thomas Burke d/b/a American Transport ("Burke") appeals from the trial court's denial of his motion for summary judgment, and the grant of summary judgment in favor of Prime Rate Premium Finance Corporation ("Prime") on Prime's claim for the remaining balance owed under a finance agreement. Because there exists no genuine issue of material fact, we affirm.

On appeal from the grant or denial of summary judgment, this court applies a de novo standard of review. *Higginbotham v. Knight*, 312 Ga. App. 525, 526 (719 SE2d 1) (2011).

In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most

favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

So viewed, the record reveals that Burke entered into a finance agreement with Prime for the purpose of financing the insurance premiums for his commercial transportation company. The agreement listed Truck Insurance Group LLC ("TIG") as the "Agent/Broker/Producer," Nova Casualty Company ("Nova") as the insurance company, Prime as the creditor, and Burke as the insured. An individual named "Jacoway" signed the agreement on behalf of TIG. The agreement provided that the "insurance agent or broker named in this Agreement is the Insured's agent, not [Prime's], and [Prime] is not legally bound by anything the agent or broker represented to the Insured. . . ."

The finance agreement was signed by Burke on September 29, 2010, and the effective date of the insurance policy was October 1, 2010. The total premium for the policy was $54,692. Burke financed $43,753 after paying a $10,939 deposit, and was

required to make nine payments of $5,017.51 on the first day of each month beginning on November 1, 2010.

On December 19, 2010, however, the policy was canceled. While not clear from the record which of the parties involved canceled the policy or the reason for cancellation, Burke asserts that TIG canceled the policy.[1] On September 13, 2011, Prime filed suit to recover the remaining balance of $36,421.91 under the finance agreement. Neither Nova nor TIG was added as a party to this action.

Burke argued below that Prime's exclusive remedy is provided in OCGA § 33-22-14 (a), and that therefore it has no cause of action against him.[2] OCGA § 33-22-14 (a) provides:

> Whenever an insurance policy is canceled and the premiums have been paid by an insurance premium finance company on behalf of the insured, if the insurer has been notified of the existence of the insurance premium finance agreement as required in Code Section 33-22-12, *the*

---

[1]An account summary from Prime lists entries indicating "Insured Cancellation" on November 18, December 19, and January 18, 2011. An entry on January 24, indicates "Company Cancellation." We note that the finance agreement provided that Prime could cancel the policy "in the event of a default in payment or any installment," and that "[i]n case of cancellation, the unpaid balance due to [Prime] shall be immediately payable by the Insured."

[2]Burke also argued that because pursuant to the finance agreement, he assigned any interest he had in unearned premiums to Prime, Prime became the real party in interest.

3

*insurer shall return whatever unearned premiums are due to the insurance premium finance company for the account of the insured. Whenever an insurer, after receiving notification of the existence of the insurance premium finance agreement, returns any unearned premium to anyone other than the insurance premium finance company named in the agreement, the insurer shall be directly responsible to such insurance premium finance company for any and all unearned premiums due as a result of the cancellation.* The insurer shall furnish to the agent, agency, or broker placing the insurance a report setting forth an itemization of the unearned premiums under the policy.

(Emphasis supplied.) This Code section does not create an exclusive remedy for a premium finance company for a claim against an insured pursuant to the finance agreement; rather it "creates a chose in action or statutory lien right in the unearned premiums in favor of the premium finance company." *Paulsen St. Investors v. EBCO Gen. Agencies*, 224 Ga. App. 507, 510 (481 SE2d 246) (1997). "[T]he premium financing agreement with the insured constitutes an account receivable entitling the finance company to recapture its [principal] one way or the other, as well as any fees and penalties.[Cits.]" Id.

As the trial court found and Prime asserted by affidavit, no unearned premiums were returned to Prime.[3] So Burke's attempt to assert OCGA § 33-22-14 (a) as Prime's exclusive remedy fails. And under the finance agreement, Burke agreed to pay the amount financed, and pay the unpaid balance due to Prime immediately upon default and cancellation of the policy. Therefore, pursuant to the terms of the finance agreement, Burke was obligated to pay Prime the balance remaining once the policy was canceled. See OCGA § 13-6-2.

While Burke attempts to adjust his position on appeal: "Burke's liability, if any, is for the loan balance after offset of unearned premiums," as explained above, there is no evidence that Prime received unearned premiums. And had the legislature intended to require an insurance premium finance company to first obtain unearned premiums and offset it against the balance owed before filing suit against the insured, it could have done so. Burke did not seek to add Nova, the insurer, to this action to recover his losses from its alleged failure to remit any unearned premium directly to

---

[3]Burke claimed that TIG and Jacaway received the unearned premiums but failed to remit the funds to Prime. Burke filed a complaint with the Department of Commerce and Insurance in the state of Tennessee claiming that he had been the victim of fraud. Burke also claimed that on January 11, 2011, Jacaway obtained new coverage replacing the Nova policy with a policy through Accident Insurance Company, and secured financing for Burke though Imperial Credit Corporation. Burke asserted that TIG also canceled this policy, and failed to remit to the finance company the unearned premiums submitted to TIG from the insurer.

5

Prime, nor did he file a third-party action against TIG for its alleged unlawful retention of any unearned premium. See, e.g., see OCGA § 33-22-14 (b) (1) - (4).

Because there is no genuine issue of material fact concerning Burke's obligation under the finance agreement, we must affirm the trial court's rulings on the motions for summary judgment.

*Judgment affirmed. Doyle, P. J., and McFadden, J., concur.*